# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

Nos. 07-1221, 07-2035

ANDRZEJ DEREZINSKI,

*Petitioner*,

*v.*

MICHAEL B. MUKASEY, Attorney General
of the United States,

*Respondent*.

_____

Petition to Review an Order of the
Board of Immigration Appeals.
No. A29 226 827

_____

ARGUED DECEMBER 11, 2007—DECIDED FEBRUARY 20, 2008

_____

Before POSNER, WOOD, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*.   Back in 1994, the Immigration
and Naturalization Service served the petitioner with an
order to show cause why he should not be deported. The
order, which was read to him, said he'd be notified of the
date of his deportation hearing at the address that he
had given the Service, which was in Chicago. Several
weeks later, the Chicago office of the Immigration Court
sent, by certified mail to the petitioner's address, a letter
notifying him of the date and time of the hearing. After
several unsuccessful attempts to deliver the letter, the

post office returned it to the sender as having been unclaimed, meaning that the mail carrier had not found anyone at the address to sign for the notice and thus acknowledge receipt. Without attempting further notice, the immigration judge conducted the deportation hearing in absentia (that is, in the petitioner's absence) and at its conclusion ordered the petitioner deported. The following month the petitioner, without explaining how he had learned about the hearing (though at the oral argument in this court his counsel said that his client had received the deportation order by ordinary mail), filed a petition to reopen his case on the ground that he had received no notice of the hearing. The immigration judge denied the petition to reopen, finding that the petitioner had refused to accept delivery of the notice. The Board of Immigration Appeals affirmed—whereupon the petitioner vanished, resurfacing only in 2006 when stopped for a traffic violation. Deportation (now called removal) proceedings resumed. The petitioner sought to reopen the original deportation proceeding on the ground that he had not received notice of the deportation hearing. The immigration judge denied the petition; so the deportation (removal) order stood. The petitioner appealed to the Board of Immigration Appeals, meeting rejection on two independent grounds there: that the petitioner's 11-year delay in filing it made the petition untimely and that he had either received notice of the hearing or, what would amount to the same thing, evaded receipt.

There is no fixed time limit on a petition to reopen a removal proceeding if the removal order was entered in the petitioner's absence and the ground of the petition is that he did not receive notice of the removal proceeding. 8 C.F.R. § 1003.23(b)(4)(iii)(A); *Kozak v. Gonzales*, 502 F.3d

35 (1st Cir. 2007); *Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (per curiam). But like any tribunal, the Board has discretion to turn down repeated requests to revisit a decision, and to do so without considering the merits of the request unless there has been a material change in circumstances, in order to avoid being flooded with redundant filings. See 8 C.F.R. §§ 1003.2(c)(1), .2(a). The Board had affirmed the rejection of the petitioner's argument that he had not been notified of the removal hearing. Nothing had changed in eleven years to require the Board to revisit the issue. It could have done so if it wanted, but an 11-year delay in seeking reopening, with no excuse except that the petitioner did not want to be deported—a delay due indeed to the petitioner's fugitive status—was a valid, indeed a compelling, ground for the Board's refusing to entertain the repetitive petition. *INS v. Doherty*, 502 U.S. 314, 323 (1992).

The Board's alternative ground was also sound, and it is worth discussing because the problem of notice of removal hearings is a recurrent one. See, e.g., *Peralta-Cabrera v. Gonzales*, 501 F.3d 837, 840-41 (7th Cir. 2007); *Kozak v. Gonzales*, *supra*; *Santana Gonzalez v. Attorney General*, 506 F.3d 274 (9th Cir. 2007). When receipt of notice is at issue, a sworn denial of having received notice makes the issue of receipt one of fact. E.g., *Joshi v. Ashcroft,* 389 F.3d 732, 735 (7th Cir. 2004); *Santana Gonzalez v. Attorney General*, *supra*, 506 F.3d at 280; *Ghounem v. Ashcroft*, 378 F.3d 740, 745 (8th Cir. 2004). Certified mail is an attractive means of quelling a factual dispute over notice because if the alien acknowledges in writing having received the notice he cannot later deny receipt. But if there is no one at the address to which the certified mail is delivered to sign for it, it is returned to the post office as "unclaimed,"

leaving unsettled whether the addressee refused to accept the certified letter or just happened to be out when delivery was attempted. However, postal regulations require the mail carrier to leave a notice of attempted delivery (and if the item isn't called for within five days, a second notice), *Postal Operations Manual* § 813.25 (2005); and if these things are done with no result, the probability that the addressee refused to accept delivery soars.

A good way to backstop service of a notice to appear by certified mail is to follow it up with a letter by regular mail. Such a letter doesn't have to be signed for and therefore can just be stuck through the mail slot. If a certified mailing followed by a regular mailing does not elicit a response, the inference that the alien is evading service becomes overwhelmingly likely—and if he argues that he moved to a different address, he will be met with the rejoinder that he was required to notify the immigration authorities of a change of address. 8 U.S.C. § 1305(a); *Wijeratne v. INS*, 961 F.2d 1344, 1347 (7th Cir. 1992).

But the additional, follow-up mailing that we are suggesting is not a constitutional requirement: "the Due Process Clause does not require . . . heroic efforts by the Government; it requires only that the Government's effort be 'reasonably calculated' to apprise a party of the pendency of the action." *Dusenberry v. United States*, 534 U.S. 161, 170 (2002). If the efforts are adequate, success is not required. *Jones v. Flowers*, 547 U.S. 220, 226-27, 231 (2006). A certified mailing to an address known to be current will ordinarily discharge the government's duty of notice, though, as we have just seen, it is not the best method.

The issue in this case, however, is not the method of giving notice but whether notice was received. An order of removal entered in the alien's absence can be reopened if he did not receive notice. 8 U.S.C. § 1229a(b)(5)(C)(ii) (current statute); 8 U.S.C. § 1252b(c)(3)(B) (statute applicable to our petitioner); *Peralta-Cabrera v. Gonzales*, 501 F.3d 837, 843-44 (7th Cir. 2007), and cases cited there. But by trying to show that he did not receive notice he creates a factual issue that the Board may be able to resolve in favor of finding notice even if there was just the initial, certified mailing. *Joshi v. Ashcroft, supra*, 389 F.3d at 735; *Ghounem v. Ashcroft*, *supra*, 378 F.3d at 745. The Board was able to do that in this case.

The petitioner's sworn denial was the only evidence of nonreceipt, and it was weak evidence because as we explained in *Joshi v. Ashcroft, supra*, 389 F.3d at 735-36 (citation omitted), "Most letters are delivered, but some aren't, and so if there is a sworn denial of receipt the trier of fact has to weigh the credibility of the denial in light of the fact that the vast majority of letters are delivered and that the intended recipient has a strong incentive to lie . . . . [However,] a bare, uncorroborated, self-serving denial of receipt, even if sworn, is weak evidence. Nothing is simpler than submitting an affidavit in which one attests that one didn't receive a particular piece of mail. False swearing unfortunately is common and the deterrent effect of the possibility of a perjury prosecution for filing a false affidavit in a civil case is close to nil."

The petitioner's lawyer told the Board—but without backing up the assertion with an affidavit from his client—that the petitioner had been out of town when the attempts at delivery were made, had inquired of the post office when he returned, and had been told that the

"parcel had been returned to the sender." This submission actually weakens the petitioner's case. Having been read the order to show cause, he should have put two and two together and realized that the "parcel" was the notice of hearing that he was expecting because the order to show cause that he had received and that had been read to him told him to expect such a notice. At that point—at least two months before the scheduled immigration hearing—he should have contacted the immigration authorities for the time and place of the hearing. *De Jimenez v. Ashcroft*, 370 F.3d 783, 787 (8th Cir. 2004).

He places great weight on the Supreme Court's decision in *Jones v. Flowers*, *supra*, which holds that when a certified letter threatening a tax foreclosure is returned unclaimed, the state must take additional steps to assure that the property owner is notified that his property may be taken. The only address that the state had was more than 30 years old, and it was quite likely that the taxpayer had moved, as in fact he had. Nor had he received notice to expect notice, as our petitioner did. And a property owner is less likely than an illegal immigrant to avoid a hearing, as it usually is possible to obtain relief from proposed tax foreclosures. Our petitioner has never had a good claim to remain in this country and may thus have been unwilling to show up for a hearing—where he might have been taken into custody, 8 U.S.C. § 1226(a)—though by failing to do so he would have become ineligible for most forms of discretionary relief, 8 U.S.C. § 1229a(b)(7); *Leal-Rodriguez v. INS*, 990 F.2d 939, 950 (7th Cir. 1993); *Lopez v. INS*, 184 F.3d 1097, 1101 n. 4 (9th Cir. 1999); *In re M- S-*, 22 I. & N. Dec. 349, 355 (BIA 1998), and possibly suffered other adverse consequences as well. 8 U.S.C. § 1229a(b)(5); *Kay v. Ashcroft*, 387 F.3d 664, 671-72 (7th Cir. 2004); *Ursachi v. INS*, 296 F.3d 592, 595 (7th

Cir. 2002); *Nazarova v. INS*, 171 F.3d 478 (7th Cir. 1999). His subsequent effort to evade removal is consistent with an inference that he willfully refused to attend the hearing.

So the petitioner has no case. But the immigration authorities could save themselves some headaches by including the date, time, and place of the hearing in the order to show cause. The only obstacle is bureaucratic, but what greater obstacle is there to efficiency than bureaucracy? The order to show cause is issued by the Department of Homeland Security, but the notice of hearing is issued by the Immigration Court, which is part of the Justice Department. The Department of Homeland Security does not know the hearing schedule of the immigration judges, so it can't put the information required to be included in the notice in the order to show cause. The solution would require a degree of cooperation between separate cabinet-level departments that would doubtless be difficult to forge. The snafu in this case, after all, occurred before the creation of the Department of Homeland Security, and thus at a time when all the immigration agencies were in the Department of Justice, so that interdepartmental cooperation was not required.

The petition for review is

DENIED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*