In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-2554

GEZIM DAKAJ, MIRE DAKAJ, and
KRISTIAN DAKAJ,

*Petitioners*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

Petition for Review of an Order of
the Board of Immigration Appeals.
Nos. A95-583-271, A95-583-272, A95-583-273

ARGUED JANUARY 28, 2009—DECIDED AUGUST 31, 2009

Before BAUER, RIPPLE and TINDER, *Circuit Judges*.

PER CURIAM. Gezim Dakaj, his wife Mire and their minor son Kristian have filed this petition seeking review of a decision of the Board of Immigration Appeals (the "BIA" or the "Board") affirming an immigration judge's denial of their applications for asylum, withholding of removal and protection under the Convention

Against Torture ("CAT"). For the reasons set forth in this opinion, we now grant the petition for review, vacate the BIA's decision and remand the case for further proceedings.

## I

## BACKGROUND

In June 2002, Gezim Dakaj applied for asylum, withholding of removal and CAT relief on behalf of himself, his wife Mire and their son Kristian. The Dakajs claimed that they risked persecution if required to return to Albania because of Gezim's and Mire's participation in the anti-Communist movement there. At their hearing in February 2007, where they appeared pro se, Gezim testified that, since joining the movement and the Democratic Party[1] in 1990, he had been arrested twice and beaten, that at various times men in police uniforms or supporters of the Socialist Party had prevented him from operating his fruit stand and that shots had been fired at his house. Mire testified that men harassed and threatened her at their fruit stand because they supported the Democratic Party.

---

[1] The Albanian Democratic Party, the largest opposition to the Socialist Party, has been in and out of power since 1992. *See Gjerazi v. Gonzales*, 435 F.3d 800, 802 (7th Cir. 2006); *Bace v. Ashcroft*, 352 F.3d 1133, 1135 (7th Cir. 2003). It is a center-right conservative political party and has been the leading party in the governing coalition since the 2005 parliamentary elections.

The immigration judge ("IJ") discredited the Dakajs' story based on inconsistencies in their testimony. The IJ also concluded that the mistreatment described did not constitute persecution and that the Dakajs did not face a risk of persecution if they returned to Albania because the Democratic Party was now in power.

On March 8, 2007, the Dakajs filed, pro se, a timely notice of appeal ("NOA"). The NOA form instructed them to state in detail their reasons for appealing, but they included only two sentences:

> (1) The immigration judge misstated facts about the current government of Albania and
>
> (2) The immigration judge refused to let Respondent, Mire Dakaj, testify regarding her experiences in Albania and about events that were directly relevant to her claim for asylum.

A.R. 53. They also checked the box on the form specifying that they intended to file a separate written brief.

On September 6, 2007, the BIA sent to the Dakajs' address through regular mail the following documents: (1) a briefing schedule informing the Dakajs that they had until September 27, 2007, to submit a brief, (2) a copy of the IJ's decision and (3) a transcript of the hearing testimony. The Dakajs never filed a brief, and so on October 18, 2007, the Government moved for summary affirmance of the IJ's decision.

The Dakajs received the Government's motion on or about October 20. They then retained counsel, who filed

a brief on November 5 along with a motion asking the BIA to accept the brief "out of time." *Id.* at 18. The Dakajs claimed that they were not aware of the briefing deadline until they received a copy of the Government's submission and saw an attached copy of the briefing schedule stating that their brief was due on September 27. In affidavits attached to their motion, Gezim and Mire swore that they never had received any mail from the Board prior to October 20, that they had not moved from their current address, that they had contacted and hired an attorney for advice "since we did not receive anything that had told us to file our brief," and that they "did not intentionally fail to file the opening brief." *Id.*

The BIA denied the motion, rejected the Dakajs' brief, and informed the Dakajs that it would not consider any further motions to accept a brief. The BIA found the Dakajs' reasons for delay insufficient, pointing out that the briefing schedule and hearing transcript had been mailed to the Dakajs, yet there was no evidence that these materials had been returned as undeliverable by the U.S. Postal Service.

In February 2008, the Dakajs asked to modify and amend their NOA, reiterating that they had not received the briefing schedule, that they had acted conscientiously in presenting their case to the BIA, and that it would be inequitable for the BIA to summarily dismiss their case. Their newly proposed NOA specified four grounds for appeal: the IJ's adverse credibility finding, the past-persecution analysis, the translator's effectiveness, and the IJ's finding that country conditions in Albania had improved.

The BIA denied the Dakajs' motion to modify the NOA. The BIA found that because the Dakajs produced no objective evidence to support their "self-serving" assertion that they never had received the briefing schedule, they had failed to overcome the presumption of regular delivery of the mail. *Id.* at 2-3. The Dakajs' motion to modify the NOA, the BIA continued, was merely an attempt to circumvent the earlier denial of their motion to file an untimely brief. The BIA also took issue with what it described as a "false factual claim" in the Dakajs' original NOA regarding the IJ's refusal at the hearing to allow Mire to testify; the BIA concluded that the Dakajs' "willingness to make a false claim to this Board undercuts the reliability of their claim . . . that they did not receive the briefing schedule mailed by the Board and also weighs against a favorable exercise of discretion on their motion." *Id.* at 3.

The Dakajs then filed a petition for review in this court. In their petition, they challenge the BIA's refusal to allow them to file an untimely brief or to amend their notice of appeal. They also challenge the substantive basis for the IJ's decision.

## II

## DISCUSSION

### A. Denial of Leave to File Brief Out-of-Time

This court reviews the BIA's decision to reject a late brief for abuse of discretion. *Gutierrez-Almazan v. Gonzales*, 491 F.3d 341, 343 (7th Cir. 2007). The BIA may reject a

tardy brief, *see* 8 C.F.R. § 1003.3(c)(1) ("In its discretion the Board *may* consider a brief that has been filed out of time." (emphasis added)), but it must provide an explanation showing that it considered the petitioner's arguments and did not merely react to them. *Gutierrez-Almazan*, 491 F.3d at 343-44.

The BIA denied the Dakajs' motion for leave to file a late brief because it disbelieved their claim that they had not received notice of the briefing schedule for their appeal. The Dakajs submitted, along with their motion for leave to file a late brief, affidavits in which they declared under oath that they never received the briefing schedule that was sent by regular mail to their house. The BIA declined to accept the Dakajs' claims; in its decision denying the motion, the Board wrote: "[A] review of the record indicates that the briefing schedule and hearing transcript were mailed to the respondents at their current mailing address . . . and there is no indication that they were returned to the Board as undeliverable by the United States Postal Service." Petitioners' Br. App. 37. Later, in its decision affirming the IJ's decision, the Board expanded on its determination not to accept the late-filed brief. There, the Board explained that "[t]he respondents' self-serving claim that they did not receive the briefing schedule, standing alone, is insufficient without any objective evidence to overcome the presumption of regular delivery of the mail and the lack of any evidence in the record that this Board's briefing schedule was not delivered." A.R. 53.

The Dakajs submit that the BIA's decision to deny them leave to file a late motion should be reversed; they

contend that the Board did not explain adequately its reasons for rejecting their sworn assertions that they did not receive the briefing schedule. The Government submits that the Board's explanation was sufficient; it notes that the Board explained, in its initial decision on the motion, that there was no evidence in the record to indicate that the briefing schedule had been returned by the Post Office as undeliverable. The Government also points to the Board's final decision on the Dakajs' appeal, in which the Board stated that the Dakajs' "self-serving claim" of non-receipt was "insufficient without any objective evidence to overcome the presumption of regular delivery of mail . . . ." Resp. Br. 15 (quoting A.R. 2-3, 336-37, 353-54).

Whether an asylum applicant received notice of his asylum proceedings is a question of fact. *See Joshi v. Ashcroft*, 389 F.3d 732, 735 (7th Cir. 2004). The BIA is entitled to presume that a notice sent via regular mail was delivered to the recipient to whom it was addressed. *See, e.g., Vincent v. City Colls. of Chi.*, 485 F.3d 919, 922 (7th Cir. 2007) ("Evidence of mailing is evidence of delivery."). The BIA itself has recognized, however, that the presumption of delivery of regular mail is a weaker one than the presumption that accompanies certified mail and may be rebutted with evidence that the alien did not receive the notice. *See Matter of M-R-A-*, 24 I. & N. Dec. 665, 673-74 (BIA Oct. 31, 2008).

We have said in the past that "a bare, uncorroborated, self-serving denial of receipt, even if sworn, is weak evidence." *Joshi*, 389 F.3d at 735. *See also Derezinski v.*

*Mukasey*, 516 F.3d 619, 622 (7th Cir. 2008) ("The petitioner's sworn denial was the only evidence of nonreceipt, and it was weak evidence" where the petitioner had been a fugitive for eleven years before finally being apprehended during a traffic stop.). We also have made clear, however, that such a denial must be evaluated in light of all of the relevant circumstances present in the case; if other evidence exists that supports the alien's claim, then the Board must weigh that evidence as well. In *Joshi*, for example, the Board had rejected an asylum applicant's sworn assertion of non-receipt as "uncorroborated." *Joshi*, 389 F.3d at 735. We reversed because the BIA had failed to consider the applicant's claim in light of her conduct after the notice was mailed. We wrote:

> [I]t isn't true that the claim [of non-receipt] was not corroborated, or, what amounts to the same thing, was not supported by "objective" evidence. The fact that before the date of the hearing she sent two certified letters to the immigration service inquiring about the status of her proceeding is some "objective" evidence, some corroboration, that she hadn't received notice of the hearing. It is inconclusive evidence, but as it was not even mentioned by the Board we cannot tell whether the Board thought it outweighed by the statistical likelihood that correctly addressed U.S. mail is delivered to the addressee, or simply overlooked it. A decision that resolves a critical factual question without mention of the principal evidence cannot be considered adequately reasoned.

*Joshi*, 389 F.3d at 736-37 (citation omitted). Accordingly, we vacated the Board's order of removal and remanded the case for reconsideration of the applicant's claim in light of all relevant information available. *Accord Silva-Carvalho Lopes v. Mukasey*, 517 F.3d 156, 160 (2d Cir. 2008) ("[T]he presumption of receipt in regular mail cases does no more than to shift a tie-breaking burden of proof to the alien claiming non-receipt."); *Kozak v. Gonzales*, 502 F.3d 34, 37 (1st Cir. 2007); *Ghounem v. Ashcroft*, 378 F.3d 740, 744-45 (8th Cir. 2004); *Salta v. INS*, 314 F.3d 1076, 1079 (9th Cir. 2002) ("Where a petitioner actually initiates a proceeding to obtain a benefit, appears at an earlier hearing, and has no motive to avoid the hearing, a sworn affidavit from Salta that neither she nor a responsible party residing at her address received the notice should ordinarily be sufficient to rebut the presumption of delivery and entitle Salta to an evidentiary hearing to consider the veracity of her allegations."). In *Derezinski*, on the other hand, we approved the Board's disbelief of the alien's denial where no such corroborating evidence was present. 516 F.3d at 622.

Indeed, the BIA itself, in two cases decided after the Dakajs', has acknowledged the necessity of a plenary review of the circumstances surrounding an alien's claim of non-receipt of notice. In *Matter of M-R-A-*, the Board set forth an extensive, non-exclusive list of relevant factors:

> (1) the respondent's affidavit; (2) affidavits from family members or other individuals who are knowledgeable about the facts relevant to whether notice

was received; (3) the respondent's actions upon learn-
ing of the in absentia order, and whether due
diligence was exercised in seeking to redress the
situation; (4) any prior affirmative application for
relief, indicating that the respondent had an incen-
tive to appear; (5) any prior application for relief
filed with the Immigration Court or any prima facie
evidence in the record or the respondent's motion of
statutory eligibility for relief, indicating that the
respondent had an incentive to appear; (6) the respon-
dent's previous attendance at Immigration Court
hearings, if applicable; and (7) any other circumstances
or evidence indicating possible nonreceipt of notice.

24 I. & N. Dec. at 674; *accord Matter of C-R-C-*, 24 I. & N.
Dec. 677, 679-80 (BIA Oct. 31, 2008).

Contrary to its later recognition of the need to
consider all relevant information, the Board in the
Dakajs' case does not appear to have considered any-
thing other than the affidavits and the fact that the
United States Postal Service did not return the notice as
undeliverable. As the Board has acknowledged, however,
the Postal Service will not necessarily know when a
piece of mail has been misdelivered. *See Matter of M-R-A-*,
24 I. & N. Dec. at 667 (noting that "if the United States
Postal Service mistakenly delivers the notice to the
wrong address, the person who actually received it
might not return it").

More importantly, there is no indication that the
Board gave any consideration to any of several facts that
support the Dakajs' claim that they never received no-

tice. The Dakajs initiated these proceedings all the way back in 2002, when Gezim filed an application for asylum, withholding of removal, and protection under the CAT. The Dakajs' application was an affirmative invocation of the procedural and substantive protections of the immigration-law process—not merely a reaction to removal proceedings instituted by the Government, as claims for asylum often are. Furthermore, the Government does not claim that the Dakajs ever missed any other deadline or hearing date at any point in the proceedings; to the contrary, they attended their hearing before the IJ and promptly filed a notice of appeal of the IJ's decision. Finally, it is clear that the Dakajs took quick action in an attempt to cure their default. The Dakajs were served with the Government's motion for summary affirmance "on or about" October 20, 2007. App. 18. They promptly hired counsel, who submitted a brief and a motion to file it out-of-time on November 5.

These facts, taken together, could be read to confirm the Dakajs' claim of non-receipt by establishing that they had a demonstrated commitment to the asylum process and a strong interest in setting forth their position in their brief to the Board. From this it could be inferred that if the Dakajs had known that an appellate brief was due on September 27, they would have filed one on or before that date. We do not hold that the Board was *required* to reach that conclusion; that determination is within the Board's province, at least in the first instance. We do hold, however, that the Board was required to consider these relevant factors, along with any others of which it might be aware, and to explain its decision in light of them.

Accordingly, we must vacate the Board's decision and remand the case for reconsideration of the Dakajs' motion to file their brief out-of-time.

## B. Denial of Leave to File Amended Notice of Appeal

The Dakajs also submit that the BIA erred in denying their motion to submit a modified notice of appeal. We do not see any basis for ordering the Board to permit the Dakajs to amend. The Dakajs submit that the Board's refusal to let them amend deprived them of due process of law. Their inability to present their arguments to the Board did not stem from any infirmity in their original notice of appeal, however; it stemmed from their failure to submit a timely brief after telling the Board that they were going to do so. The enforcement of procedural deadlines does not violate due process. Indeed, "[c]ourts cannot operate without setting and enforcing deadlines." *Gross v. Town of Cicero, Ill.*, 528 F.3d 498, 499-500 (7th Cir. 2008). Moreover, even if their original notice of appeal were somehow infirm, the Dakajs could not blame that infirmity on their failure to receive the briefing schedule because the notice necessarily was filed long before the briefing schedule was due to be sent.

Thus, we see no basis for requiring the Board to allow the Dakajs to amend their notice of appeal in the way that they sought to do in this case. As the Board recognized, their attempt to amend the notice appears simply to have been a second attempt to present the same arguments that the Board declined to consider when it refused to accept the late-filed brief. If on remand, how-

ever, the Board decides to accept the Dakajs' brief out-of-time, it then may have occasion to reconsider the notice-of-appeal issue, albeit in a slightly different way.

If it does decide to accept the brief, the Board should then address the merits of any of the arguments therein that it finds to be within the scope of the notice of appeal. In making this determination, the Board of course should keep in mind the "long-established principle that the submissions of pro se aliens should be liberally construed," *Sembiring v. Gonzales*, 499 F.3d 981, 990 (9th Cir. 2007), as well as the fact that the Dakajs do not speak English. If the Board concludes that any of the arguments in the brief are outside the scope of the notice of appeal, it then should consider whether to construe these portions of the brief as a motion to amend the notice of appeal and, if so, whether such a motion should be granted.

## C.  Substantive Challenges to the IJ's Decision

Finally, the Dakajs raise various substantive objections to the IJ's decision denying their applications for relief. As the Government points out, because the Board denied the Dakajs' motions to submit their brief and amend their notice of appeal, it has not yet had an opportunity to consider the Dakajs' arguments. If, on remand, the Board decides to grant them permission to file their brief out-of-time, it then will have an opportunity to rule on the merits of their arguments, and we shall be able to review the Board's decisions on a subsequent appeal. If the Board decides to deny the motion, we

shall be able to review that decision, as well as the substantive issues, if any, that we find to be properly presented. Either way, the appropriate time for us to address the merits of the IJ's and the Board's decisions is after the Board has had an opportunity to revisit its decision on the Dakajs' motion to file their brief out-of-time.

### Conclusion

For the reasons set forth above, we grant the Dakajs' petition for review, vacate the BIA's decision and remand this case to the BIA for further proceedings consistent with this opinion.

PETITION FOR REVIEW GRANTED;
CASE VACATED AND REMANDED.