**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 4, 2011
Decided November 9, 2011

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 10-2397

| | |
|---|---|
| GEZIM DAKAJ, et al., | |
| *Petitioners,* | Petition for Review of an Order of the Board of Immigration Appeals |
| *v.* | |
| | No. A095-583-271 |
| ERIC H. HOLDER, JR., | No. A095-583-272 |
| Attorney General of the United States, | No. A095-583-273 |
| *Respondent.* | |

**ORDER**

This matter is before us for a second time. Gezim Dakaj and his wife, Mire, left Albania with their minor son and applied for asylum and withholding of removal more than a year after reaching the United States. An immigration judge denied both forms of relief, and the Board of Appeals dismissed their administrative appeal on the ground that the Dakajs had not submitted a timely brief. In our previous decision we directed the BIA to give further consideration to the Dakajs' appeal, but again the outcome did not favor the Dakajs. Once more they have petitioned for judicial review. We deny their petition.

After the collapse of an oppressive communist regime in the early 1990s, Albania spent the next decade transitioning to democracy. Two major parties, the Democratic Party and the Socialist Party, have competed (at times violently) to gain or retain power. In his asylum application, Gezim Dakaj claimed that he supported the Democrats and, as a result, his house was shot at, he was harassed and threatened by Socialist Party supporters, and he was arrested, questioned, beaten, and shot by police. The Dakajs left Shkoder, Albania, in 2000 but waited more than a year after entering the United States before they applied for asylum and withholding of removal.

In his 2007 decision the IJ concluded that the Dakajs were not eligible for asylum because they had missed the one-year application deadline. 8 U.S.C. 1158(a)(2)(B). The IJ also concluded that the Dakajs were not entitled to withholding of removal because, he found, their testimony about their encounters with Albanian police and Socialist supporters was not credible. And even if that testimony had been credible, the IJ reasoned, the treatment they allegedly endured did not rise to the level of persecution. Moreover, the IJ continued, the government had rebutted any presumption of future persecution with evidence of changed conditions in Albania.

The Dakajs filed with the BIA a notice of appeal that lists two contentions to be raised: that Mire Dakaj had not been allowed to testify at the hearing before the IJ, and that the IJ had misstated facts about the current Albanian government and thus incorrectly found that conditions in Albania had changed favorably. The Dakajs stated in their notice of appeal that they would be submitting a brief, but they missed the filing deadline. They later moved to file their brief late and also sought permission to amend their notice of appeal to include additional issues. The BIA would not accept a late brief or allow the Dakajs to amend their notice of appeal (the BIA may summarily dismiss any claim not listed in the notice of appeal, 8 C.F.R. § 1003.1(d)(2)(i)(A)). The Dakajs petitioned for judicial review.

We upheld the denial of leave to amend the notice of appeal but concluded that the BIA must reconsider the Dakajs' motion for leave to submit a late brief. *Dakaj v. Holder*, 580 F.3d 479 (7th Cir. 2009). We directed that, if on remand the BIA decided to accept a late brief, it should address the merits of any argument within the scope of the existing notice of appeal, keeping in mind that submissions from pro se aliens should be liberally construed, and that the Dakajs do not speak English. *Id.* at 485. Additionally, we directed that, if the Dakajs should include in their brief arguments outside the scope of the notice of appeal, the BIA should consider whether to construe the brief as an implicit motion to amend the notice of appeal and, if so, whether to grant the motion. *Id.*

On remand the BIA granted the Dakajs leave to file a late brief. In that brief the Dakajs argued, as signaled by their notice of appeal, that the IJ had erroneously found that

country conditions in Albania had changed. They also included in their brief three arguments not mentioned in the notice of appeal: that the translator at their hearing had performed poorly, that the IJ had erred in finding them not credible, and that the IJ's conclusion that they did not experience past persecution is not supported by substantial evidence. The BIA acknowledged that the Dakajs had included in their notice of appeal the contention about changed country conditions, but upheld the IJ's finding that conditions had changed favorably. As for the remaining arguments, the BIA declined to construe the Dakajs' brief as an implicit motion to amend their notice of appeal to include these contentions. Moreover, the BIA continued, leave to amend would have been denied even had it been requested.

Back in this court, the Dakajs first argue that the IJ erred in concluding that country conditions in Albania had changed so that they would not be in danger if they returned. We will uphold a decision to deny withholding of removal if it is supported by substantial evidence. *Kedjouti v. Holder*, 571 F.3d 718, 720 (7th Cir. 2009). When the BIA has upheld the IJ's determination and added additional reasons of its own, we review the decisions of both the BIA and the IJ. *Mema v. Gonzales*, 474 F.3d 412, 416 (7th Cir. 2007).

If an IJ finds that an applicant for withholding was persecuted in the past, the government may rebut the resulting presumption of future persecution by establishing by a preponderance of evidence that circumstances have fundamentally changed so that the applicant's life or freedom would no longer be threatened. 8 C.F.R. § 1208.16(b)(1)(i)(A); *Firmansjah v. Gonzales*, 424 F.3d 598, 605 (7th Cir. 2005). A country report may be sufficient to demonstrate changed country conditions if the report addresses the specific basis for the alien's fear of persecution. *Milanouic v. Holder*, 591 F.3d 566, 571 (7th Cir. 2010); *Toptchev v. INS*, 295 F.3d 714, 722 (7th Cir. 2002); *see also Brucaj v. Ashcroft*, 381 F.3d 602, 607 (7th Cir. 2004) (relying on State Department's country report on Yugoslavia, which discussed dismantling of Milosevic regime that had persecuted Albanians, to find that country conditions had changed as they related to ethnic Albanian).

In finding that country conditions had favorably changed, the IJ relied on references in country reports to a Democratic prime minister taking power in 2005. A new government led by the Democratic Party directly addresses the basis for the Dakajs' asserted fear of persecution, because they allegedly were targeted by the former Socialist government and its supporters because of their affiliation with the Democratic Party. Decisions from this and other courts support the IJ's finding. *See Kucana v. Holder*, 603 F.3d 394, 396 (7th Cir. 2010) (noting that State Department described Albania as stable and peaceful democratic nation that generally respects human rights and protects freedom of political dissent); *Nako v. Holder*, 611 F.3d 45, 49–50 (1st Cir. 2010) (concluding that presumption of future persecution rebutted for supporter of Democratic Party because Democratic Party now controls Albania

and there is evidence that politically-motivated violence has ceased); *Lybesha v. Holder*, 569 F.3d 877, 881–882 (8th Cir. 2009) (deciding that supporter of Democratic Party could not establish well-founded fear of future prosecution because Democrats now control Albanian government); *Bejko v. Gonzales*, 468 F.3d 482, 486–487 (7th Cir. 2006) (upholding IJ's finding that supporter of Democratic Party did not have well-founded fear of prosecution in Albania, because after 1998 there had not been a major outbreak of political violence and available evidence suggested that by 2004 the government and political parties no longer engaged in policies of abuse and coercion against opponents).

The Dakajs contend that a change in power at the national level does not necessarily mean that circumstances have changed at the local level. But the reports regarding national changes are sufficient to rebut the presumption of future persecution where the applicant has not presented evidence that local conditions are any different. *See Milanouic*, 591 F.3d at 571–572 (concluding that country report adequately rebutted presumption of future persecution when applicant failed to present evidence that local conditions were dissimilar to national conditions). The Dakajs' assertion that the national government has little influence at the local level is unsupported. Furthermore, the IJ characterized the Dakajs' hometown of Shkoder as a Democratic Party stronghold, a conclusion that the BIA found to be supported by the Dakajs' own testimony, as well as by two newspaper articles discussed in *Celaj v. Gonzalez*, 468 F.3d 1094, 1098 (8th Cir. 2006). There is substantial evidence to support the finding that the Dakajs would be safe in Albania generally, and also more specifically in Shkoder.

In upholding the IJ's conclusion that country conditions had changed favorably, the BIA did not consider two reports that the Dakajs cited in their brief to the BIA but had never submitted to the IJ. The Dakajs urge us to look at those reports, of which we may take judicial notice. *Nwaokolo v. INS*, 314 F.3d 303, 308 (7th Cir. 2002). But there is no reason to do so; the excerpts the Dakajs quoted in their brief to the BIA and likewise repeat in their brief here do not undermine the finding that country conditions have changed favorably. These excerpts discuss—generally and in broad terms—arrest and detention, police corruption, antagonism between the dominant parties in Albania, misuse of state resources, and irregular voting processes. Most of what is discussed comes nowhere close to conduct that could be described as abusive (e.g., legislative stalemates), and none of the information directly relates to the likelihood that the Dakajs risk being persecuted if they return to Albania. Even to the extent that these reports mention abuse by police, this information does not demonstrate that people are being abused *because of* their political views, in particular their Democratic affiliation.

The Dakajs further argue that the BIA should have considered these reports. But even though the BIA may take administrative notice of reports that the IJ did not consider, no regulation or court decision requires the BIA to do so. *See* 8 C.F.R. § 1003.1(d)(3)(iv) (providing that BIA may not engage in fact finding, but *may* take administrative notice of commonly known facts including current events or contents of official documents); *Meghani v. INS*, 236 F.3d 843, 848 (7th Cir. 2001) (explaining that BIA is not required to sua sponte take administrative notice of new country reports). Also, as discussed above, the reports do not undermine the finding of changed conditions.

Next, the Dakajs argue that the BIA abused its discretion in refusing to construe the inclusion of additional arguments in their brief as a motion to amend their notice of appeal. Our determination that substantial evidence supports the immigration courts' finding that country conditions in Albania have changed makes immaterial any question about the Dakajs' credibility or whether the harms they allegedly suffered constituted persecution. *See* 8 C.F.R. § 1208.16(b)(1)(i) (providing that applicant found to have suffered past persecution will not be entitled to withholding of removal if government rebuts resulting presumption of future persecution); *Milanouic*, 591 F.3d at 569–572 (upholding IJ's conclusion that although applicant established past persecution, he would not be withheld from removal because presumption of future persecution was rebutted by changed country conditions); *Toptchev*, 295 F.3d at 722 (explaining IJ's conclusion that, even if applicants had been persecuted, changed conditions rebutted presumption of future persecution). For that reason, we need not address the Dakajs' secondary argument that the BIA improperly refused to address the other issues in their brief.

Last, the government filed a motion, which has been taken with the case, asking for a remand to the BIA. That motion lacks merit for the same reason that we need not address the Dakajs' secondary argument.

Accordingly, the government's motion for remand and the Dakajs' petition for review are **DENIED**.