**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 24, 2018[*]
Decided May 4, 2018

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 16-3720

| | |
|---|---|
| WEIHUA QU,<br>    *Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | No. A205-949-618 |
| JEFFERSON B. SESSIONS, III,<br>Attorney General of the United States,<br>    *Respondent*. | |

**O R D E R**

   Weihua Qu, a 39-year-old Chinese national, applied for asylum in 2013 after overstaying a visitor visa. The immigration judge assigned her a hearing date in 2016. Qu's hearing, however, was moved up to October 2014, and the immigration court mailed a new hearing notice to her attorney at the correct business address. But neither

---

[*]The case was set for oral argument on January 24, but the argument was vacated that day. The case was submitted for decision on the briefs and administrative record to the panel hearing oral argument on January 24, 2018. *See* FED. R. APP. P. 34(a)(2)(C).

Qu nor her attorney appeared at the hearing, and the IJ ordered Qu removed in absentia. When Qu learned of this, she filed a motion to reopen the proceedings, asserting that her attorney never advised her about the rescheduled hearing. The IJ denied that motion, and then a short time later, Qu's motion to reconsider, which argued that the *lawyer* never received notice. The Board of Immigration Appeals affirmed. We deny Qu's petition for review.

## I. Background

Qu entered the United States as a nonimmigrant visitor with permission to remain until April 27, 2013. The Department of Homeland Security sent Qu a Notice to Appear in June 2013, charging her as removable because she stayed longer than permitted, *see* 8 U.S.C. § 1227(a)(1)(B). At the first hearing, held in July 2013, DHS initiated removal proceedings; Qu conceded removability. But Qu, represented by Roxolana Harasymiw, applied for asylum because she claimed that she had been persecuted by the Chinese government for violating its one-child policy and that the government's persecution would continue if she returned. The IJ scheduled an asylum hearing for Qu on August 25, 2016, and Harasymiw signed the hearing notice in court on Qu's behalf.

The immigration court mailed an amended hearing notice to Harasymiw at her work address—150 S. Wacker Dr., Suite 650, Chicago, IL, 60606 (which Qu concedes was the correct address). The notice gave a new hearing date—October 22, 2014—that was 17 months earlier than the originally scheduled hearing date. There is no evidence in the record that this notice was returned undelivered. Qu and Harasymiw failed to appear at this rescheduled hearing, and the IJ ordered Qu removed in absentia. This decision was also mailed to Harasymiw at the Wacker Drive address.

Some months later Qu filed an application for employment authorization, but it was denied in May 2015 because the immigration court had denied her applications for asylum and withholding of removal. A month later on June 30, 2015, Qu, through new counsel, Xiaoyu Li, moved to reopen Qu's immigration proceedings. The short motion Li filed on Qu's behalf said that Qu had learned in May 2015 that she was ordered removed, that she had been told her asylum hearing would be held in 2016, and that, as stated in Qu's May 27, 2015 affidavit, "[s]he was not notified of the new court date . . . by her previous attorney . . . or her interpreter." There were no affidavits from either Harasymiw or Qu's interpreter supporting the motion, but it was accompanied by a

notice of consent to substitute attorneys, which was signed by Qu, Li, and Harasymiw and, Qu asserts, dated "5/26/15."

The IJ denied Qu's motion on July 21, 2015, because she thought it rested on an ineffective-assistance-of-counsel claim, and Qu's new attorney, Li, had not followed the procedure for asserting that argument, *see Matter of Lozada*, 19 I. & N. Dec. 637 (B.I.A. 1988). About three weeks later Qu filed a motion to reconsider in which she argued that lack of notice, not ineffective assistance of counsel, had been the basis of her motion to reopen. This motion was supported by a letter from Harasymiw to attorney Li and Harasymiw's affidavit, dated July 10 and July 15, respectively. In her affidavit Harasymiw swore that she had represented Sun Chengzhi (Qu's husband and a derivative beneficiary on her asylum application) and continued: "It appears that Respondent was re-scheduled for an appearance in court sometime in fall of 2014. However, counsel did not receive notice of the re-scheduled hearing, for which reason neither Respondent nor the affiant appeared." Harasymiw's two-sentence letter to Li stated that she was enclosing a copy of Qu's application for asylum; Harasymiw also apologized for her delay in responding, saying that she "had some medical issues in connection with [her] brain surgery."

The IJ denied the motion for reconsideration too, saying that Qu had based it on new facts and arguments that should have been raised in her initial motion to reopen. The IJ reasoned that Qu's failure to include an affidavit from Harasymiw in support of the initial motion had been fatal. Since Qu herself was not entitled to receive notice by mail while represented by counsel, only the attorney's nonreceipt would be grounds to reopen. But the motion "failed to address the purported lack of notice to Ms. Harasymiw"; instead it seemed that Qu believed her lawyer had received notice and failed to inform her. Or, the IJ continued, at least Qu could have explained why she had not yet obtained an affidavit of nonreceipt from her lawyer and asked to keep the record open until she heard back from Harasymiw.

Qu appealed the IJ's decision to the Board, which affirmed. The Board determined that Qu had not offered enough evidence in either motion to overcome the presumption that the notice of rescheduling, sent by regular mail, had been delivered to Harasymiw. It also pointed out that in Qu's motion to reopen, she had included a "Consent to Substitution of Attorneys" that was dated March 26, 2015, not, as Qu says, "5/26/15," and was signed by Harasymiw, "which undermines the respondent's argument that Ms. Harasymiw was unable to provide an affidavit due to health reasons until after the motion to reopen was filed on June 30, 2015."

## II. Analysis

The parties agree that because the Board agreed with the IJ and supplemented her rulings with its own analysis, the panel should review "both the underlying decision and the Board's additional reasoning." *Cojocari v. Sessions*, 863 F.3d 616, 621 (7th Cir. 2017). Qu concedes that mailing a notice of removal to a petitioner's attorney constitutes notice, *Marinov v. Holder*, 687 F.3d 365, 368 (7th Cir. 2012) (citing 8 U.S.C. § 1229(a)(2)(A); 8 C.F.R. § 292.5(a)), and that there is a rebuttable presumption that a notice sent via regular mail is delivered, *Dakaj v. Holder*, 580 F.3d 479, 482 (7th Cir. 2009) (citing *Matter of M.R.A.*, 24 I. & N. Dec. 665, 673–74 (B.I.A. 2008)).

As a threshold matter, the government asserts that this court's jurisdiction is limited to the Board's order because Qu failed to exhaust her administrative remedies as related to her motion to reopen. *See* 8 U.S.C. § 1252(d)(1). Specifically, Qu appealed to the Board only the IJ's denial of her motion to reconsider, not the denial of her motion to reopen. But in the immigration context, we have said "the general exhaustion requirement is not a jurisdictional rule," and it does not apply to "issues that are not raised by the parties but instead addressed by the administrative agency itself." *Arobelidze v. Holder*, 653 F.3d 513, 517 (7th Cir. 2011) (internal quotation marks omitted). Here, the Board's order addresses both motions, so the issue was exhausted.[1]

On appeal Qu, now represented by a third attorney, urges reversal on the ground that she never received her second hearing notice. First, focusing on her motion to reopen, Qu argues that the Board and the IJ erroneously concluded that the immigration court provided sufficient notice of the rescheduled hearing even though Qu's affidavit proved she did not receive notice. For this proposition, Qu relies on *Smykiene v. Holder*, 707 F.3d 785 (7th Cir. 2013), in which this court reaffirmed that "an affidavit of nonreceipt is evidence of nonreceipt." *Id.* at 787 (citing *Joshi v. Ashcroft*,

---

[1] The government also asserts that Qu's motion to reopen was untimely because it was filed more than 90 days after the final administrative order. *See* 8 U.S.C. § 1229a(c)(7)(C)(i). But here, Qu is contesting the IJ's in absentia removal order. An alien may be ordered removed in absentia after the alien has received notice of her removal hearing and waived her right to that hearing. *Smykiene v. Holder*, 707 F.3d 785, 786–87 (7th Cir. 2013). But "if [she] never received the notice, there is no waiver and so [she] is entitled to reopen the removal proceeding to enable [her] to contest removal . . . . 'at any time.'" *Id.* at 786–87 (quoting 8 U.S.C. § 1229a(b)(5)(C)(ii)).

389 F.3d 732, 736 (7th Cir. 2004)). She apparently interprets *Smykiene* to say that an affidavit alone suffices to rebut the presumption that sent mail is delivered.

There are two problems with this argument. First, Qu reads *Smykiene* too broadly. The case does not say that *any* evidence of nonreceipt is enough to warrant reopening. It says that once nonreceipt is shown (barring evidence of purposeful evasion by the petitioner), then the IJ should reopen proceedings. 707 F.3d at 787–88. Notably in *Smykiene*, in addition to the petitioner's attestation, there was evidence from the U.S. Postal Service that the petitioner's notice had been returned to the immigration court as "Attempted—Not Known." *Id.* at 786. Here there is no evidence that the hearing notice was returned undelivered. Also, *Joshi*, the case on which *Smykiene* relies, says a petitioner's affidavit asserting nonreceipt is "weak evidence" that alone may not overcome the presumption that sent mail is delivered. *Joshi*, 389 F.3d at 736–37.

Second, Qu's initial motion did not rely on the *immigration court's* failure to notify her directly—nor should it have, because the court would send notice only to counsel of record. Instead, Qu swore that her attorney and interpreter never notified her of "other court dates." Her affidavit places the blame on her agents for not telling her about the rescheduled hearing. Therefore, her affidavit is not even "weak evidence" that the immigration court failed to provide notice. Blaming the agents also explains why the IJ believed the motion to reopen was premised on counsel's ineffectiveness.

Qu next argues that the IJ abused her discretion in denying Qu's motion to reconsider in part because she faulted Qu for not submitting Harasymiw's affidavit in support of the motion to reopen rather than the later motion. This was error, Qu asserts, because neither the affidavit nor the information it contained was available to Qu when she filed her first motion. Without knowing why Harasymiw was not available, Qu contends, she could not provide the IJ with information beyond what she said in the motion to reopen.

But Qu could have attested to her failed attempts to contact Harasymiw and told the IJ that she was continuing to ask Harasymiw what happened. The IJ did not abuse her discretion in finding that Qu at least should have explained what efforts were underway to investigate and asked the court to hold the record open. *See Sarmiento v. Holder*, 680 F.3d 799, 803 (7th Cir. 2012) (citing 8 U.S.C. § 1229a(c)(6–7)). Qu's use of new evidence to support her motion to reconsider was inappropriate because the motion's purpose was to "specify the errors of law or fact in the previous order," not to submit new facts or arguments supporting reopening a case. 8 U.S.C. § 1229a(c)(6)(C).

Moreover, the second motion asserted a different theory of relief—failure to notify Harasymiw—which the statute does not allow, *see id.* § 1229a(c)(6); *Sarmiento*, 680 F.3d at 803. Qu's argument to the contrary is not consistent with the record.

Moreover, Harasymiw's belated affidavit is itself problematic. First, it does not provide sufficient evidence, standing alone or "evaluated in light of all of the relevant circumstances present in the case" to overcome the presumption that mail is delivered. *See Dakaj*, 580 F.3d at 482–83; *Derezinski v. Mukasey*, 516 F.3d 619, 622 (7th Cir. 2008). Second, it does not mention Qu; it says only that Harasymiw represented "Respondent" Sun Chengzhi, Qu's husband. But as the government points out, that is different from saying that Qu lacked notice. Qu does not address this. Third, the only possible explanation about why the affidavit was late came in Harasymiw's unsworn letter to Li. But the Board correctly concluded that Harasymiw's purported health problems were not in evidence because neither her letter nor Li's assertions to the Board about Harasymiw's medical concerns were sworn. *See Matter of Ramirez-Sanchez*, 17 I. & N. Dec. 503, 506 (B.I.A 1980).

Last, Qu argues that, in inferring that she could have obtained Harasymiw's affidavit earlier than July 15, the Board erroneously found that she had obtained consent to substitute attorneys from Harasymiw on March 26, 2015. Qu contends that the Board simply misread the handwriting on the consent form. Qu insists that the date on the consent form is "5/26/15" not "3/26/15." This means her then-attorney, Li, did not obtain Qu's records until after May 2015 and Harasymiw was not in a position to provide an affidavit about nonreceipt of notice before late May. Therefore, Qu argues, Harasymiw's July 2015 affidavit was newly discovered after the motion to reopen, and the IJ should have allowed Qu to supplement her original motion to reopen.

But this is irrelevant and, if true, a harmless error by the Board. Even if Qu and Li had no contact with Harasymiw before July 17, the IJ reasonably concluded that they could have, and should have, explained their unsuccessful efforts to contact Harasymiw at the time the first motion was filed. If anything, Qu's claim that she was unable to contact Harasymiw until late May supports the IJ's original conclusion that Qu was moving to reopen on the ground of ineffective assistance of counsel because Harasymiw was unresponsive.

Before concluding, we note that we are disheartened by the advocacy Qu has received throughout this case. The affidavits and arguments submitted by all her advocates leave us questioning where Qu's case went so wrong. Given Harasymiw's

unexplained absence and failure to communicate, we understand why an adjudicator would understand Qu's claim to be ineffective assistance of counsel. And Li served her no better, given the paltry support for the motion to reopen. But, even so, Qu has never properly asserted that counsel's ineffectiveness caused her predicament, and has presented no meritorious argument on appeal that her motions to reopen and for reconsideration should have been granted.

Because neither the Board nor the IJ abused their discretion, and none of Qu's arguments have merit, we DENY Qu's petition for review.