In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2793

NAZAR BACHYNSKYY,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A095-491-475

ARGUED FEBRUARY 22, 2011—DECIDED DECEMBER 15, 2011

Before WILLIAMS and TINDER, *Circuit Judges*, and
GOTTSCHALL, *District Judge*.[*]

WILLIAMS, *Circuit Judge*. Nazar Bachynskyy is a twenty-
eight year old Ukrainian citizen who entered the United
States without being admitted or paroled. After being
turned over to the legacy Immigration and Naturalization

---

[*] The Honorable Joan B. Gottschall, United States District Court
for the Northern District of Illinois, Eastern Division, sitting by
designation.

Service at a truck stop weigh station, removal proceedings were commenced. Bachynskyy conceded removability, but sought withholding of removal and protection under the Convention Against Torture. At the conclusion of the hearing on his claims, the Immigration Judge stated that she was continuing the case for four months, but stated that "[i]f I render a written decision before that date, you don't need to come back to court. Just make sure you stay in touch with your lawyers." Bachynskyy did not specifically request voluntary departure at this hearing, and the IJ did not discuss the possibility or requirements of voluntary departure at the conclusion of the hearing. In the written decision, issued only three days after the hearing, the Immigration Judge denied Bachynskyy's withholding and Convention Against Torture claims, but granted Bachynskyy voluntary departure. The order stated that Bachynskyy was required to post a $500 bond within five days. Bachynskyy's lawyer at the time, however, allegedly did not receive the decision until the day before the bond was due, and the bond was never paid.

In his direct appeal to the Board of Immigration Appeals, Bachynskyy filed a motion to reinstate voluntary departure, alleging that notice regarding the bond was deficient. While the Board was considering the motion, new regulations went into effect requiring immigration judges to advise the noncitizen, *before* granting voluntary departure, of the amount of the voluntary departure bond and the duty to post bond within five business days. 8 C.F.R. § 1240.26(c)(4) (2009). The Board dismissed Bachynskyy's appeal and rejected his request to reinstate

voluntary departure. Bachynskyy filed a motion to reopen with the Board. The Board denied his petition, finding that the new regulations regarding notice were not retroactive. This petition for review followed.

We find that the warnings required by the current regulations regarding voluntary departure are not retroactively applicable to grants of voluntary departure made before January 20, 2009. We also find that Bachynskyy cannot raise a colorable due process claim as there was no procedural defect based on the lack of advisals, and Bachynskyy did receive (though somewhat flawed) notice of the bond requirement. Therefore, we deny in part, and dismiss in part, the petition for review.

## I. BACKGROUND

Nazar Bachynskyy, a twenty-eight year old citizen of Ukraine, entered the United States on July 2, 2000 without being admitted or paroled. Bachynskyy, a truck driver, was turned over to the the legacy Immigration and Naturalization Service ("INS") after admitting to officials at a weigh station that he lacked documentation. On January 23, 2003, the legacy INS initiated removal proceedings by filing a Notice to Appear ("NTA") in which Bachynskyy was charged with removability under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") for being an alien present in the United States without being admitted or paroled. On February 5, 2003, through his counsel Slava Tenenbaum, Bachynskyy filed a motion to change venue

from the Immigration Court in Kansas City to Chicago. In the motion, Bachynskyy admitted the allegations in the NTA, and conceded removability. On March 14, 2003, the Immigration Court in Kansas City granted the change of venue.

On August 26, 2003, Bachynskyy filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). On January 17, 2005, Tenenbaum withdrew his appearance on behalf of Petitioner, and new counsel, Christopher Grobelski, entered an appearance on his behalf. Bachynskyy later withdrew his application for asylum.

On April 1, 2008, the Immigration Judge ("IJ") conducted a full merits hearing regarding Bachynskyy's withholding and CAT claims. At the conclusion of the hearing, the IJ noted that she wanted to more carefully review the background information. She stated that she was continuing the case to July 29, 2008 for a decision, but also stated that "[i]f I render a written decision before that date, you don't need to come back to court. Just make sure you stay in touch with your lawyers." Bachynskyy did not specifically request voluntary departure at this hearing, and the IJ did not discuss the possibility or requirements of voluntary departure at the conclusion of the hearing.

Three days later, on April 4, 2008, the IJ issued a written opinion, finding Bachynskyy removable, and denying his application for withholding of removal and his CAT claim. However, the IJ granted Bachynskyy voluntary departure, stating that he "is required to post a $500.00 departure bond to [e]nsure compliance with the or-

der." The decision also stated that "if [Bachynskyy] fails to depart as required or otherwise fails to comply with this order, the above order granting voluntary depart-ure shall be withdrawn without further notice or proceed-ings . . . ."

The written decision was mailed to the Law Offices of Christopher Grobelski in Chicago, and the date on the transmittal form was April 4, 2008. The cover page also stated that a Notice of Entry as Attorney before the Board of Immigration Appeals ("BIA") must be filed on or before May 2, 2008. Bachynskyy did not pay the $500 bond before the 5 business-day period expired on April 11, 2008.

On May 2, 2008, Bachynskyy appealed the IJ's decision to the BIA. The Department of Homeland Security ("DHS") opposed the appeal on August 27, 2008, and informed the BIA that Bachynskyy had not paid the voluntary departure bond.[1] Bachynskyy's counsel, Grobelski, filed a motion to reinstate voluntary departure with the BIA on September 15, 2008. The motion stated that:

> We would like to bring to the Board's attention that the Respondent's attorney did not receive the IJ's [April 4, 2008] decision until April 10, 2008, which is probably due to Chicago having the nation's worst postal service. Please see attached Exhibit B, an article documenting Chicago's postal service as the worst in the country.

---

[1]  Prior to January 20, 2009, the BIA would assume that the bond was posted unless informed otherwise. *See Matter of Gamero*, 25 I. & N. Dec. 164 (BIA 2010).

The motion also stated that a "late attempt to post bond with DHS was unsuccessful," but did not provide specifics for the attempt. Bachynskyy's counsel also argued that:

> Five days to post a bond in cases when the order of IJ is mailed to the Respondent is not a reasonable period of time to be able to do so, especially when notice is served via the U.S. Postal Service (USPS). The Board itself has, for a long time, recognized and "strongly encourage[d]" the use of overnight courier to ensure timely delivery. Since it was not the Respondent's fault, but rather the result of inadequate service on the part of USPS, we request that the Board preserve the relief of voluntary departure in case the Respondent's appeal is denied.

While the BIA was considering the motion, new regulations went into effect regarding the grant of voluntary departure. Effective January 20, 2009, the regulations, among other changes, now require immigration judges to advise the noncitizen, *before* granting voluntary departure, of the amount of the voluntary departure bond and the duty to post bond within five business days. 8 C.F.R. § 1240.26(c) (2009).

On January 8, 2010, the BIA dismissed Bachynskyy's appeal and rejected his request to reinstate voluntary departure. Bachynskyy did not file a petition for review of the BIA's January 8, 2010 decision. On February 16, 2010, Bachynskyy, through new (and present) counsel, filed a motion to reopen with the BIA, arguing that the IJ failed to provide him with notice regarding his responsibilities concerning voluntary departure *before* granting

voluntary departure, and that this lack of notice deprived him of an opportunity to understand the significance of posting the $500 bond. He argued that he was prejudiced in not receiving the full advisals as they relate to the grant of voluntary departure, and that the IJ's decision was received several days after the IJ entered the order, which prevented him from posting bond within five business days.

The BIA denied his petition on July 8, 2010, finding that the new regulations regarding notice were not retroactive, and that when Bachynskyy failed to post the required bond, "there was no voluntary departure order for the Board to reinstate," and thus the BIA on Bachynskyy's appeal properly declined to reinstate the IJ's grant. Finally, the Board declined to reopen Bachynskyy's case because he had not submitted supporting affidavits or other evidentiary material warranting a hearing. This petition for review followed.

## II. ANALYSIS

We start our analysis with the question of jurisdiction. The government argues that we lack jurisdiction under 8 U.S.C. § 1229c(f), which states that "[n]o court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure." *See also Pawlowska v. Holder*, 623 F.3d 1138, 1142 (7th Cir. 2010). It is clear that the INA bars review of the agency's discretionary decision to deny voluntary departure. *See Lopez-Chavez v. Ashcroft*, 383 F.3d 650, 652 (7th Cir. 2004) ("As we indicated earlier, this case does *not* present the

question whether courts have jurisdiction to review the merits of an underlying decision on a request for voluntary departure; it is perfectly clear that they do not.") (citing 8 U.S.C. § 1229c(f)); *Sofinet v. I.N.S.*, 196 F.3d 742, 748 (7th Cir. 1999). Bachynskyy, however, does not challenge the IJ's decision to deny voluntary departure for the very good reason that he was in fact granted such relief.

While we have not addressed whether 8 U.S.C. § 1229c(f) bars review of a motion to reopen related to voluntary departure, we have on occasion held that where we lack jurisdiction to review an underlying order, we also lack jurisdiction over appeals from denials of motions to reopen and reconsider those orders. *See, e.g., Martinez-Maldonado v. Gonzales*, 437 F.3d 679, 683 (7th Cir. 2006). However, in the context of the jurisdictional bar found in § 1252(a)(2)(B)(i), we recently clarified in *Calma v. Holder*, ___ F.3d___, 2011 WL 6016158, at *7 (7th Cir. December 5, 2011), that "there are identifiable circumstances under which a critical procedural step in a removal proceeding, such as . . . a refusal to reopen a case, lies within our jurisdiction even though we are barred from evaluating the BIA's ultimate decision" on the merits. We also noted that where "it is impossible to distinguish the challenged action from the determination on the merits, then jurisdiction is lacking and the petition must be dismissed." *Id*. We find the same reasoning applicable to the jurisdictional bar found in § 1229c(f) and note that Bachynskyy's challenge is wholly independent of the merits of the grant of voluntary departure.

But regardless of the applicability of 8 U.S.C. § 1229c(f) to this case, we retain jurisdiction over constitutional claims and questions of law. *See* 8 U.S.C. § 1252(a)(2)(D); *Kucana v. Holder*, 130 S. Ct. 827, 831-32 (2010). A legal question arises when the Board misinterprets a statute, regulation, constitutional provision, or its own precedent, applies the wrong legal standard, or fails to exercise its discretion at all. *Patel v. Holder*, 563 F.3d 565, 568 (7th Cir. 2009) (citing *Adebowale v. Mukasey*, 546 F.3d 893, 896 (7th Cir. 2008)). Bachynskyy seeks to raise a question of law, one asking whether certain advisals given to a noncitizen before being granted voluntary departure, which are required by current regulations, are applicable to his case, when his grant of voluntary departure preceded the effective date of those regulations. We find that we have jurisdiction to address this question of law, but that the current regulations, and the advisals they contain, are not retroactively applicable to grants of voluntary departure made before January 20, 2009.

The INA provides that the Attorney General "may permit" certain removable noncitizens to "voluntarily [] depart the United States at the alien's own expense" in lieu of being removed. 8 U.S.C. § 1229c(a)(1), (b)(1). Noncitizens who are granted voluntary departure and comply with its terms are able to make their own travel arrangements, avoid extended periods of detention, and avoid the period of inadmissibility that would otherwise result from an order of removal. *See Dada v. Mukasey*, 554 U.S. 1, 11 (2008).

Voluntary departure can be sought before the conclusion of removal proceedings, or at the conclusion of proceedings. *See id.* at 10; *see also* § 1229c(b)(2), (a)(2)(A). Noncitizens permitted to depart voluntarily at the conclusion of their removal proceedings "shall be required to post a voluntary departure bond[.]" 8 U.S.C. § 1229c(b)(3). The regulations at the time Bachynskyy was granted voluntary departure stated that the bond "shall be posted with the district director within 5 business days of the immigration judge's order granting voluntary departure." 8 C.F.R. § 1240.26(c)(3) (2006). If the bond is not posted within five business days, the voluntary departure order "shall vacate automatically and the alternate order of removal will take effect on the following day." *Id*. A noncitizen who fails to voluntarily depart from the United States within the specified voluntary departure period is subject to a civil fine of between $1000 and $5000, and such an individual is rendered ineligible for a period of 10 years to receive certain forms of discretionary relief, including cancellation of removal, adjustment of status, and a subsequent grant of voluntary departure. 8 U.S.C. § 1229c(d)(1)(A)-(B). The INA specifically requires that "[t]he order permitting an alien to depart voluntarily shall inform the alien of the penalties under this subsection." 8 U.S.C. § 1229c(d)(3).

Before the change in the regulations, noncitizens began to get caught between the numerical time limit in the voluntary departure provision, and the statutory right to file a motion to reopen. The voluntary departure provision requires that noncitizens depart within 60 days after being granted such relief. 8 U.S.C. § 1229c(b)(2) (related to

voluntary departure and stating that the period within which the alien may depart voluntarily "shall not be valid for a period exceeding 60 days"). The INA also permits noncitizens an opportunity to file a motion to reopen within 90 days of a final order of removal. 8 U.S.C. § 1229a(c)(7) (granting a noncitizen the right to file one motion to reopen and providing that "the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal"). In certain cases, noncitizens were subject to civil penalties for failing to depart when choosing to exercise their right to file a motion to reopen. And if they chose to depart, their departure would result in automatic withdrawal of a pending motion to reopen. 8 C.F.R. § 1003.2(d).

In *In re Diaz-Ruacho*, 24 I. & N. Dec. 47 (BIA 2006), the BIA found that a noncitizen who failed to meet the voluntary departure bond requirement was "not subject to the penalties of" the INA for failure to depart during the departure period, because by failing to post the bond, voluntary departure never took effect. This essentially allowed a noncitizen to "choose" not to accept voluntary departure by failing to post the bond, and thus not be subject to penalties for not departing during the voluntary departure period if the non-citizen instead chose to remain and file a motion to reopen proceedings.

Following a split in the circuit courts, the issue reached the Supreme Court in 2008 in *Dada v. Mukasey*, 554 U.S. 1 (2008). *Dada* held that a noncitizen must be given an opportunity to withdraw her request for voluntary

departure before the departure period expired in order to preserve her statutory right to file a motion to reopen. *Id*. at 21 ("We hold that, to safeguard the right to pursue a motion to reopen for voluntary departure recipients, the alien must be permitted to withdraw, unilaterally, a voluntary departure request before expiration of the departure period, without regard to the underlying merits of the motion to reopen."). Dada, though, had posted the bond, and so the failure to post the bond was not at issue.

Following *Dada*, the Attorney General and DHS issued new regulations. The current regulations, made effective January 20, 2009, still require the posting of the voluntary departure bond within five business days, but state that a failure to post a bond does *not* terminate the obligation to depart or exempt a person from the consequences of failing to depart under INA § 240B(d), 8 U.S.C. § 1229c(d). *See* 8 C.F.R. § 1240.26(c)(4) (2009). This rule reverses the BIA's decision in *In re Diaz-Ruacho* for grants of voluntary departure on or after January 20, 2009. Additionally, under the current regulation, the filing of a petition for review in federal court automatically terminates the grant of voluntary departure. 8 C.F.R. § 1240.26(f).

The current regulations also require IJs to provide certain notices to individuals *before* granting voluntary departure. Under 8 C.F.R. § 1240.26(c)(3), the IJ *must* advise the individual of: (1) the amount of the bond and the duty to post bond within five business days and any voluntary departure conditions beyond those enumerated in the

regulations; (2) that voluntary departure will terminate automatically upon the filing of a motion to reopen or reconsider during the voluntary departure period and the alternate order of removal will take effect immediately; and (3) that if an appeal is filed, the individual must submit proof of having posted the voluntary departure bond within 30 days of having filed the appeal. After this notice is provided, the individual has the opportunity to accept or decline voluntary departure.

The agency, at the time of rulemaking, indicated an intent that the new regulations would apply prospectively only, that is, to cases on or after January 20, 2009. *See* 73 Fed. Reg. 76927, 76936 ("[T]he provisions of this rule are prospective only."). The BIA confirmed this in *Matter of Velasco*, 25 I. & N. Dec. 143 (BIA 2009), in which it found that the 2009 voluntary departure regulations did not apply retroactively, and that where an individual granted voluntary departure by an IJ before January 20, 2009 failed to pay the bond, the penalties imposed for failing to depart the United States within the departure period did not apply. This was a benefit to some noncitizens at the time, as the BIA noted that such a ruling "eliminates any unfairness to an alien who, prior to the regulatory change, chose not to post a voluntary departure bond because the Board had ruled in *Matter of Diaz-Ruacho* that failing to post the bond would automatically vacate the grant of voluntary departure . . . ." *Id*. at 146.

In January 2010, the BIA applied the new regulations to a post-January 2009 grant of voluntary departure,

finding that where an IJ did not advise the noncitizen of the consequences of failing to provide proof of the posting of the bond to the BIA on appeal, the non-citizen was entitled to a new hearing with the required advisals and a new period of voluntary departure. *Matter of Gamero*, 25 I. & N. Dec. 168 (BIA 2010). The BIA stated in a footnote in that decision that the prior version of the regulations, (in effect at the time of Bachynskyy's grant of voluntary departure), "did not include an explicit requirement that Immigration Judges must advise aliens of bond conditions and duties before granting voluntary departure." *Id*. at 166 n.3.

Bachynskyy essentially concedes that the post-January 20, 2009 regulations are not retroactive, and that the current mandatory pre-grant warnings by the IJ were not required by specific regulations in effect at the time of Bachynskyy's hearing. However, he argues that the new regulatory scheme shows the importance of warning a noncitizen of the consequences of failing to post the required bond and urges this court to find that a failure to advise a noncitizen of the bond require-ment and the consequences of failing to depart even before January 20, 2009 warrants reversal. We decline to make such a finding. Under the current regulations, even if the individual fails to or decides not to pay the bond, the penalties for failing to leave within the departure period attach. Currently, an individual must choose whether or not to *accept* voluntary departure, because once the IJ grants it, the penalties loom in the distance. 8 C.F.R. § 1240.26(c)(4) (2009). This was not the case pre-January 20, 2009, where a failure to pay

the bond did not result in civil penalties if the individual did not depart within the departure period, because, as discussed above, it was as if voluntary departure never attached. *In re Diaz-Ruacho*, 24 I. & N. Dec. 47. Thus, while warnings and pre-grant advisals would certainly have been ideal, especially in this case where there was never any discussion of voluntary departure, and notice was conducted by mail and arrived only a day before the bond deadline, the current *mandatory* warnings exist to protect against dangers that Bachynskyy did not face.

Bachynskyy also relies on *In re Cordova*, 22 I. & N. Dec. 966, 968 (BIA 1999), in which the Board found that an IJ has a duty to inform noncitizens of apparent eligibility for voluntary departure under 8 U.S.C. § 1229c(a), which relates to voluntary departure sought either before or at the master calendar hearing. The Board explained that it was "critical" that noncitizens "be informed of the requirements for relief, as well as their apparent eligibility, and that they be given the opportunity to apply for such relief." 22 I. & N. Dec. at 971. Bachynskky, however, does not claim that he was somehow prevented from seeking, or that he would have sought, voluntary departure under 8 U.S.C. § 1229c(a) instead of pursuing his CAT and withholding claims, and thus *In re Cordova* is not directly on point.

Bachynskyy also seeks to raise a due process claim for the alleged notice deficiencies, and we come back to the jurisdictional issue. A constitutional claim " 'would at least have to be colorable' before a court will exercise jurisdiction to review such a claim or question." *Zamora-Mallari v. Mukasey*, 514 F.3d 679, 696 (7th Cir. 2008) (quot-

ing *Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001)). "To be colorable in this context . . . the claim must have some possible validity." *Torres-Aguilar*, 246 F.3d at 1271 (internal quotation omitted). Bachynskyy alleges a due process violation based on "the procedural defect of not being properly advised of what was required to maintain his grant of voluntary departure," and claims that he was prejudiced as a result. We have held that in most cases, a procedural defect is cured by allowing a new hearing in which the defect is not present. *Tamas-Mercea v. Reno*, 222 F.3d 417, 427 (7th Cir. 2000) (citing *Batanic v. INS*, 12 F.3d 662, 664 (7th Cir. 1993)). But given that the current regulations were not made retroactive, and pre-grant advisals were not required before January 20, 2009, Bachynskyy cannot rely on the lack of advisals to serve as the "defect" underlying a due process claim.[2]

---

[2] Bachynskyy does not raise a due process claim for a violation of 8 C.F.R. § 1240.11(a)(2), which provides, in relevant part: "[t]he immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing, in accordance with the provisions of § 1240.8(d)," and thus we do not address that regulation's application to this case. Courts have read 8 C.F.R. § 1240.11(a)(2) to impose a duty on the immigration judge to inform a noncitizen of apparent eligibility for relief, and a showing of prejudice is required to show that the noncitizen's right to due process was violated. *See Bejko v. Gonzales*, 468 F.3d 482, 487 (7th Cir. 2006) ("Bejko's due process claim based on the IJ's failure to inform is reversible error only if he can demonstrate prejudice arising from it . . . .").

The sequence of events alerting Bachynskyy to the bond requirement is somewhat troubling: the IJ did not discuss the possibility of voluntary departure with him at the April 1, 2008 hearing and continued the case until July 29, 2008 for a decision on Bachynskyy's CAT and withholding claims. While she also stated that, "[i]f I render a written decision before that date, you don't need to come back to court," and "make sure you stay in touch with your lawyers," she did not alert Bachynskyy or his counsel to the possibility of being awarded voluntary departure in that decision, or that a bond would be required if he were granted such relief. And notice of Bachynskyy's grant of voluntary departure and the bond requirement allegedly did not reach counsel until the day before the bond was due.

However, a decision of the Immigration Judge may be rendered orally or in writing. If the decision is in writing, the regulations state that "it shall be served on the parties by first class mail to the most recent address contained in the Record of Proceeding or by personal service." 8 C.F.R. § 1003.37(a). If the individual is represented by counsel, the decision must be served on the attorney of record. 8 C.F.R. § 1292.5(a). Here, a written decision was served on Bachynskyy's counsel of record, albeit by regular mail that did not arrive with haste. The BIA itself has recognized that the presumption of delivery of regular mail is a weaker one than the presumption that accompanies certified mail and may be rebutted with evidence that the alien did not *receive* the notice. *See Matter of M-R-A-*, 24 I. & N. Dec. 665, 673-74 (BIA 2008); *see also Dakaj v. Holder*, 580 F.3d

479, 482 (7th Cir. 2009). But this is not a case where abso-
lutely no notice was received. Even if there were a regula-
tory violation, Bachynskyy's counsel at the time did
receive notice prior to the bond deadline, and Bachynskyy
did not place in the record below any affidavits or evidence
saying that he himself was unaware of the bond
deadline, or why exactly he was unable to meet that
deadline. *See Derezinski v. Mukasey*, 516 F.3d 619, 621 (7th
Cir. 2008) (noting that due process required only efforts
reasonably calculated to notify party to satisfy constitu-
tional notice requirement). And there is no explanation
as to why a late attempt to pay the bond was unsuccessful,
or what attempts were in fact made. Given the record
before us, we find that Bachynskyy has not raised a valid
due process claim.[3]

### III. CONCLUSION

Given that the regulations now in place are not retro-
active and the petition does not raise a viable due

---

[3] At oral argument, the government suggested that it was the
duty of immigration counsel (or, presumably, an unrepresented
noncitizen) to physically visit the immigration court to
check the non-electronic "docket" or case file, or call the
Executive Office for Immigration Review case information
hotline on a daily basis to check for updates.
*See* http://www.justice.gov/eoir/contact.htm (last visited
December 7, 2011). We decline to imply any such an affirmative
duty on immigration counsel or *pro se* noncitizens in the absence
of electronic notifications, and note that we do not rely on the
existence of the hotline or physical docket in finding that notice
was received in this case.

process claim, the petition for review is DENIED in part and DISMISSED in part.