In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-3376

JUAN E. LOPEZ-ESPARZA,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A200-837-118.

ARGUED OCTOBER 8, 2014 — DECIDED OCTOBER 23, 2014

Before POSNER, FLAUM, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. Juan Lopez-Esparza, who asks us to reverse the denial of his petition for cancellation of removal, entered the United States illegally in 1999 from Mexico; he is a Mexican citizen, though he has resided in the United States since his 1999 entry continuously except for several visits to Mexico between 2000 and 2008. In 2010 he was stopped for what the parties call a "minor traffic offense"; it was driving without a license, but that would be a

minor offense if for example he had a license but had left it at home—we don't know. The stop led to the discovery that he was an illegal alien, and the institution of removal proceedings.

He conceded that he was removable but applied for cancellation of removal on the ground that he "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." 8 U.S.C. § 1229b(b)(1)(A). The word "continuous" is qualified in the statute; it requires only that the petitioner for cancellation of removal not have "departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days." § 1229b(d)(2). The petitioner has the burden of proving his entitlement to cancellation of removal under these provisions by a preponderance of the evidence. See, e.g., 8 C.F.R. § 1240.8(d). Furthermore, the continuous period of U.S. residence terminates automatically when the alien receives a notice requiring him to appear for a removal hearing before an immigration judge because he is suspected of being an illegal immigrant. 8 U.S.C. § 1229b(d)(1)(A).

At his hearing before an administrative law judge, Lopez-Esparza testified that he had come to the United States in May 1999, which was more than ten years before he received his notice to appear in August 2010 and applied for cancellation of removal in November 2010. The administrative law judge credited Lopez-Esparza's testimony about when he'd come to the United States, and so the only issue is the continuity of his residence here.

He testified that he'd taken three trips to Mexico during his time in the United States, the first lasting from late in

2001 to early in 2002, the second in late 2002, and the third early in 2008. The dates of departure and return that he gave would if true have established that his total time in Mexico between 1999 and the present was only 114 days, with none of the trips having lasted longer than 90 days. The administrative law judge, however, while stating that he did "not believe that [Lopez-Esparza] may necessarily [have] be[en] testifying falsely under oath," denied cancellation of removal on the ground that Lopez-Esparza "simply cannot recall dates with the necessary specificity to qualify him for cancellation of removal." The Board of Immigration Appeals affirmed the administrative law judge in a perfunctory order.

It's certainly true that Lopez-Esparza could not "recall dates" well. He could not remember whether he'd returned to Mexico for the first time on the 18th, 20th, or 24th of December 2001, whether his subsequent eight-day trip to Tijuana had taken place late in 2002 or early in 2003 and lasted four to five days or eight days, and whether his 2008 trip had begun in January, March, or February and lasted a little more than a month or, more precisely, five and a half weeks. The only document submitted in the proceeding was his Mexican marriage certificate, dated February 1, 2001. The administrative law judge thought the date contradicted Lopez-Esparza's testimony that he had taken only three trips to Mexico since coming to the United States. But he may simply have gotten the year of his wedding wrong. His first return to Mexico, which he said took place in December 2001, may actually have taken place in December 2000, in which event he presumably had remained in Mexico from then until his wedding in February 2001, two months later, rather than making a separate trip then to get married. He testified that the trip he thought he'd begun in December

2001 was for his wedding; since the wedding had actually taken place in February of that year, his departure from the United States had probably taken place at the end of the preceding year, 2000.

He testified that he'd not left the United States for a total of more than 90 days, though apparently he was referring to his longest trip rather than aggregating the time of all three trips. The government acknowledges in its brief that "there is no indication that the immigration judge did not believe Lopez[-Esparza]'s statement" that he hadn't left the country for more than 90 days at a time. The best guess is that he spent a total of 137 days outside the United States—71 days on the first trip, 8 days on the second, and 58 days on the third. Other possibilities consistent with his testimony for the total time he spent in Mexico after coming to the United States are 120 days and 158 days. All three estimates are under the 180-day cutoff.

The essential point, overlooked by the administrative law judge, is that the presence of uncertainty about the exact start and end dates of a trip need not create uncertainty about whether the trip exceeded some cutoff. In this case the full range of uncertainty is below the 180-day limit.

Lopez-Esparza's testimony was confused and confusing, but the issue should have been whether he had managed to establish by a preponderance of the evidence that he had not left the United States for a total of more than 180 days since coming here. The administrative law judge rested his decision on the fact that, given Lopez-Esparza's inability to pin down the precise dates of departure from and return to the United States, there could be no certainty that he hadn't exceeded the limit. The judge should have asked himself

whether it was more likely than not that Lopez-Esparza had not exceeded the limit; for that, rather than certainty, is the correct test for whether a proposition (that Lopez-Esparza had not exceeded the 180-day limit) has been established by a preponderance of the evidence.

The judge appears not to have appreciated the limitations of recollection. Many people have trouble remembering what they did a few days ago, let alone a decade ago. At the oral argument we asked the government's lawyer whether *she* had happened to travel outside the United States in 2001. She said she had. We asked her how long she'd spent outside the United States. She didn't remember. We asked her whether she had any records that would show how long a time she had spent abroad. She said she probably could obtain such records, but seemed doubtful. She of course is an educated person—a lawyer in federal service. Lopez-Esparza is a ranch hand. As an illegal immigrant he would be far less likely than the government's lawyer to have travel records. He may well have traveled to and from Mexico by stealth, in which event there would be no record of his crossing the border a decade ago.

The administrative law judge made no finding that Lopez-Esparza was lying. He seems to have thought that Lopez-Esparza's only problem was not remembering dates. Had the failure of memory been total—"I know I visited Mexico several times, but I don't know how many times, how long any of the visits were, what the aggregate time was, or when the visits were, and I have no documents that cast light on any of these issues"—the administrative law judge would have had no choice but to deny the application for cancellation of removal. The petitioner in our hypothet-

ical example would not have satisfied his burden of proof
because he would not have produced any evidence at all to
show that he'd not exceeded the 90-day or 180-day limits.
But this is not our case. Lopez-Esparza testified at length,
and the problem was that since his testimony was incon-
sistent, though apparently innocently so, we don't know ex-
actly how much time he spent in Mexico. But, to repeat, the
question is whether it's more likely than not that his time
there, though it can't be pinpointed, did not exceed the stat-
utory limit.

It's difficult to prove a negative ("I have not spent more
than 180 days in Mexico since 1999"), especially when it con-
cerns travel dates some years in the past and there is no
documentation. Allowance for this difficulty is necessary if
the preponderance—the more likely than not—standard is to
be honored. Lopez-Esparza presented his evidence, which
was weak but not nothing, and all the government did was
point out the weaknesses. Some evidence would seem to
preponderate over no evidence. We do not say that Lopez-
Esparza proved his case, but we do say that the administra-
tive law judge (seconded by the Board of Immigration Ap-
peals) did not apply the correct standard.

We've left for last a question that one of the judges on the
panel raised at the oral argument: whether the challenge to
the denial of Lopez-Esparza's petition is based on a claim of
legal error. The courts have no jurisdiction to review denials
of relief based on the 10-year continuous-residence rule. 8
U.S.C. § 1252(a)(2)(A). Yet "the administrative findings of
fact are conclusive *unless* any reasonable adjudicator would
be compelled to conclude to the contrary." § 1252(b)(4)(B)
(emphasis added). The government acknowledges that this

is the correct approach for us to take in reviewing the administrative law judge's decision to deny relief to Lopez-Esparza for failing to present evidence of adequate specificity concerning the dates on which he was in Mexico. A denial at the agency level of a petition for cancellation of removal based on ten years of continuous residence in the United States is reviewable by us. *Nunez-Moron v. Holder*, 702 F.3d 353, 358 (7th Cir. 2012). We're not alone in so ruling, see, e.g., *Garcia v. Holder*, 732 F.3d 308, 312 (4th Cir. 2013); *Acevedo-Aguilar v. Mukasey*, 517 F.3d 8, 9 (1st Cir. 2008), and no contrary precedents have been cited to us.

Even if this is wrong, it would not save the ruling denying Lopez-Esparza's petition for review. Our ground for setting aside that ruling is not that the administrative law judge erred in finding that Lopez-Esparza had failed to carry his burden of proof, but that the judge applied the wrong standard—the standard, of his invention, that imperfect recollection precludes a finding of continuous residence. That was a legal error. Perfect recollection isn't part of the burden of proving continuous residence, and it couldn't be because it would be inconsistent with the preponderance standard. 8 C.F.R. § 1240.8(d). A witness's testimony may reveal a bad memory without necessarily vitiating his testimony and so preventing him from carrying his burden of proof.

The order of the Board of Immigration Appeals is vacated and the case remanded to the Board.