In the

# United States Court of Appeals
## For the Seventh Circuit
_____

Nos. 14-3062, 15-1720, and 15-1769

LUIS APARICIO-BRITO,

*Petitioner*,

*v.*

LORETTA LYNCH,
Attorney General of the United States,

*Respondent*.

_____

Petitions for Review of Orders of the
Board of Immigration Appeals.
No. A 076-879-145

_____

ARGUED JANUARY 6, 2016 — DECIDED MAY 31, 2016

_____

Before POSNER and WILLIAMS, *Circuit Judges*, and
PALLMEYER, *District Judge*.*

WILLIAMS, *Circuit Judge.* Following petitioner Luis Apari-
cio-Brito's fourth arrest for driving under the influence, the

_____

* Of the Northern District of Illinois, sitting by designation.

U.S. government commenced deportation proceedings against him. Aparicio-Brito, a native and citizen of Mexico, did not challenge removability; instead, he focused his efforts on suppressing the government's evidence regarding his alienage and applying for cancellation of removal. But an immigration judge (IJ) denied his suppression motions and his application, as well as his request for voluntary departure. In doing so, the IJ concluded that the government sufficiently demonstrated that Aparicio-Brito had entered the United States without inspection, and that cancellation of removal and voluntary departure would be improper because of Aparicio-Brito's inability to demonstrate continuous presence in the United States, good moral character, and extreme hardship on family members upon deportation.

Aparicio-Brito appealed the IJ's decision to the Board of Immigration Appeals (BIA), arguing that the IJ and the government had violated his due process rights in various ways before and during the proceedings, and challenging the IJ's conclusions regarding alienage, cancellation of removal, and voluntary departure. The BIA dismissed this appeal and denied Aparicio-Brito's later request to reopen proceedings.

We find that the IJ and the government complied with their statutory responsibilities relating to Aparicio-Brito's removal proceedings. Also, the IJ properly concluded that a summary of Aparicio-Brito's statements to government officials adequately demonstrated his alienage. And the IJ correctly denied Aparicio-Brito's application for cancellation of removal based on his inability to demonstrate ten years of continuous physical presence in the United States. So we deny Aparicio-Brito's petition for review.

## I.  BACKGROUND

Aparicio-Brito entered the United States without inspection sometime in 1998. He has remained in the United States since then, aside from two multi-month trips back to Mexico in the early 2000s. During his residency in the United States, Aparicio-Brito was arrested and convicted four separate times for driving under the influence (DUI). The first three DUI offenses occurred in 1999, 2001, and 2003, respectively. The fourth offense, which occurred in March 2010, attracted the attention of the Department of Homeland Security (DHS).

Several days after his March 2010 arrest, Aparicio-Brito was transferred into DHS custody. Shortly thereafter, DHS officers filled out a Form I-213, stating that Aparicio-Brito had admitted to being a Mexican citizen and to entering the United States without inspection. DHS then instituted removal proceedings by issuing a Notice to Appear (NTA) that charged Aparicio-Brito with being an immigrant present in the United States without admission or parole under 8 U.S.C. § 1182(a)(6)(A)(i).

In advance of his removal hearing, Aparicio-Brito stated that he would neither admit nor deny the allegations in the NTA or the charge of removability. He did, however, file an application for cancellation of removal as a non-permanent resident under 8 U.S.C. § 1229b(b), and attached to the application attendance sheets for Alcoholics Anonymous (AA) meetings dating back to 2010 and a letter regarding his church attendance. Aparicio-Brito also filed a motion to suppress any statements he made to law-enforcement officers that appeared in the Form I-213, and a motion for sub-

poenas to compel the appearance of any officers present when he made these statements.

At the removal hearing, Aparicio-Brito declined to challenge the accuracy or authenticity of the Form I-213, prompting the IJ to deny both of Aparicio-Brito's motions and to admit the Form into evidence. The IJ also concluded that the Form adequately established Aparicio-Brito's alienage under 8 C.F.R. § 1240.8(c), and sustained the removability charge. After Aparicio-Brito declined to designate a country for removal, the IJ referenced his duty to advise Aparicio-Brito of his right to apply for asylum and withholding of removal. But the IJ said this requirement had been satisfied when, several months earlier, the IJ had instructed Aparicio-Brito to apply for cancellation of removal before the removal hearing. (The IJ apparently viewed this instruction to encompass applications for withholding and asylum, too.) The IJ found that Aparicio-Brito's failure to apply for withholding or asylum alongside cancellation of removal amounted to abandonment of those issues and identified Mexico as the country of removal.

The hearing then turned to Aparicio-Brito's application for cancellation of removal. Aparicio-Brito testified that his two daughters—both of whom were U.S. citizens—would suffer greatly if he were removed to Mexico. He stated that he was their primary means of financial support but would have difficulty obtaining employment in Mexico, and that he would not take them to Mexico because of violence and inadequate schooling options. Aparicio-Brito also testified that he had remained in the United States continuously since entering in 1998, apart from two separate trips to Mexico to visit his parents, each for approximately three to four

months. In addition, Aparicio-Brito acknowledged his four DUI convictions.

The IJ denied Aparicio-Brito's application for cancellation due to his failure to satisfy three of the eligibility requirements under § 1229b(b)(1) of the Immigration and Nationality Act. Specifically, the IJ found that Aparicio-Brito had failed to establish (1) ten years of "continuous physical presence in the United States," based on his two trips to Mexico; (2) "exceptional and extremely unusual hardship" for his daughters, based on his wife's employment status and no indication that his daughters suffered from any serious medical conditions; and (3) "good moral character," based on his four DUI convictions. The IJ also concluded that this lack of good moral character warranted rejection of Aparicio-Brito's request for voluntary departure.

Aparicio-Brito appealed the IJ's decision to the BIA, arguing, among other things, that the IJ violated his due process rights by asking him questions in an adversarial manner during the removal hearing; that the DHS officers failed to inform him of his right to remain silent before interviewing him; and that the Form I-213, by itself, could not establish alienage. The BIA affirmed the IJ's ruling. In doing so, it concluded that IJs are statutorily authorized to interrogate and cross-examine witnesses; that the DHS officers adequately notified Aparicio-Brito of his rights when they served him with an NTA; and that a Form I-213 is presumed reliable where, as here, there is no evidence of duress or coercion.

Aparicio-Brito then moved the BIA to reconsider its decision and to reopen the proceedings. The BIA denied both motions, concluding that most of Aparicio-Brito's arguments appeared verbatim in his opening brief on appeal, and that

"new controlling authority" he cited—*Lopez-Esparza v. Holder*, 770 F.3d 606 (7th Cir. 2014)—was distinguishable. Aparicio-Brito later filed a motion to reconsider the ruling, which the BIA denied. This appeal followed.

## II. ANALYSIS

"Because the [BIA] affirmed the decision of the IJ and added its own reasoning, we review both decisions, bearing in mind that factual and credibility determinations must be supported by substantial evidence, while legal conclusions are reviewed de novo." *Lishou Wang v. Lynch*, 804 F.3d 855, 858 (7th Cir. 2015) (citations omitted). On appeal, Aparicio-Brito argues that the IJ and the government violated his due process rights. He also claims that the IJ improperly relied on the Form I-213 in determining alienage, and erred in denying his application for cancellation of removal and his request for voluntary departure. In addition, he argues that the BIA erroneously denied his motions for reconsideration and to reopen the removal proceedings. We disagree.

### A.  No Violation of Petitioner's Due Process Rights

Although immigrants in removal proceedings have due process rights under the Fifth Amendment, these rights do not extend to "hearings for discretionary relief, such as those conducted in response to a § 1229b application for cancellation of removal." *Delgado v. Holder*, 674 F.3d 759, 765 (7th Cir. 2012). But statutory provisions impose procedural requirements on removal proceedings, including the opportunity to examine evidence supplied by the government, present evidence on one's own behalf, and cross-examine government witnesses. *Id.* at 765–66; 8 U.S.C. § 1229a(b)(4). It is this latter category of protections to which we turn our attention.

Aparicio-Brito claims that the IJ and the government violated his due process rights in over half a dozen ways before and during the removal hearing. These various claims, however, largely amount to conclusory assertions that lack support in the case law and the record.

### 1. No Improper Questioning by Immigration Judge

Aparicio-Brito contends that the IJ acted improperly by repeatedly asking him questions in a prosecutorial manner. IJs are authorized to "interrogate, examine, and cross-examine the alien and any witnesses" during removal proceedings. 8 U.S.C. § 1229a(b)(1); *see also Sankoh v. Mukasey*, 539 F.3d 456, 467 (7th Cir. 2008) ("Unlike Article III courts, an immigration court is a more inquisitorial tribunal."). We have repeatedly observed that an IJ can interrupt a witness's testimony to ask questions—even repeatedly—so long as the questions are relevant, non-confrontational, and clarifying in purpose. *See Delgado*, 674 F.3d at 766–68 (collecting cases); *Iliev v. INS*, 127 F.3d 638, 643 (7th Cir. 1997) (stating that IJs have "broad discretion to control the manner of interrogation in order to ascertain the truth"). However, an IJ's "discretion [in questioning] is bounded by the applicant's right to receive a fair hearing." *Podio v. INS*, 153 F.3d 506, 509 (7th Cir. 1998); *see also Kerciku v. INS*, 314 F.3d 913, 917–18 (7th Cir. 2003) (per curiam) (observing that while an IJ may "limit[] the extent of some testimony or frequently interrupt[] the applicant's presentation," the IJ may not "bar[] complete chunks of oral testimony that would support the applicant's claims").

We find nothing inappropriate with the IJ's questioning of Aparicio-Brito. To the contrary: nearly all of the IJ's questions were clarifying in nature and relevant to the issues re-

lating to Aparicio-Brito's application for cancellation of re-moval—for example, the date he entered the United States, the dates and locations of his DUI offenses, and the dates he travelled to and from Mexico for family visits. In fact, certain questions related to issues that were *beneficial* to Aparicio-Brito's application—for example, whether his daughters received medical assistance cards or food stamps, his weekly salary, his monthly rental payments, and the specific hard-ships his daughters might face upon his removal. Nowhere in the record is there any indication that Aparicio-Brito be-came "frazzled" by these questions. *Apouviepseakoda v. Gon-zales*, 475 F.3d 881, 885–86 (7th Cir. 2007) ("[T]he closest cases are those in which 'the questioning becomes so aggressive that it frazzles applicants and nit-picks inconsistencies' until a petitioner 'became so distraught that the immigration judge was forced to pause the proceedings to give the [non-citizen] a chance to collect herself.'" (second alteration in original) (quoting *Giday v. Gonzales*, 434 F.3d 543, 549 (7th Cir. 2006))). In addition, the IJ sustained only one objection to Aparicio-Brito's counsel's questions, and permitted Apa-ricio-Brito's counsel to question him until there were no questions left to ask. In sum, the IJ's questioning during the hearing should be commended, not criticized.

### 2. Motions Concerning Form I-213 Were Properly Denied

Aparicio-Brito also contends that the IJ violated his right of cross-examination by denying his motion to suppress the Form I-213 and his motion for subpoenas. Immigrants in removal proceedings generally have the right to "cross-examine witnesses presented by the Government." 8 U.S.C. § 1229a(b)(4). However, when the evidence at issue is a Form

I-213 completed by a DHS agent, "the absent agent 'cannot be presumed to be an unfriendly witness or other than an accurate recorder.'" *Barradas v. Holder*, 582 F.3d 754, 763 (7th Cir. 2009) (quoting *Espinoza v. INS*, 45 F.3d 308, 311 (9th Cir. 1995)); *see also Pouhova v. Holder*, 726 F.3d 1007, 1013 (7th Cir. 2013) ("As a general rule, a Form I-213 is treated as inherently trustworthy and admissible even without the testimony of the officer who prepared it."*)*. So a Form I-213 is properly admitted without the opportunity for cross-examination, unless there is an indication that the Form was carelessly or maliciously drafted or was intended to serve as anything other than an administrative record. *Id.*; *Antia-Perea v. Holder*, 768 F.3d 647, 658 (7th Cir. 2014).[1]

Aparicio-Brito has failed to identify a single detail concerning the Form I-213 here that suggests error or foul play on the part of DHS. At the removal hearing, Aparicio-Brito's counsel was unable to articulate any factual basis in support of the motion to suppress. Nor has Aparicio-Brito highlighted any such basis in his various appellate briefs to the BIA or to this Court. So the Form I-213 was properly admitted without corroborating evidence from the DHS officers.

### 3. Form I-213 Adequately Informed Petitioner that His Statements Could Be Used Against Him

Aparicio-Brito also attempts to suppress the Form I-213 on the ground that his due process rights were violated

---

[1] Aparicio-Brito invites us to revisit this aspect of *Antia-Perea v. Holder* in a one-sentence footnote and without any justification or elaboration. We decline to do so. *Cf. McClain v. Retail Food Emp'rs Joint Pension Plan*, 413 F.3d 582, 586 (7th Cir. 2005) ("We require a compelling reason to overturn circuit precedent.").

when state and federal officials did not timely warn him that his statements could be used against him in subsequent proceedings. In addition, he further complains that the warning he did receive was not conveyed in a language that he could understand. While we are sympathetic to Aparicio-Brito's arguments, they lack the requisite legal and factual support.

Aparicio-Brito claims that the warning was untimely because it was supplied after his interview with DHS officials had concluded. He seeks refuge in the fact that when an immigrant is "arrested without warrant and [is] placed into formal proceedings," the examining officer must notify the immigrant that "any statement made may be used against him or her in a subsequent proceeding." 8 C.F.R. § 287.3(c). But "formal proceedings" begin when the government files a notice to appear in an immigration court. *Id.* § 1239.1(a); *Hussain v. Keisler*, 505 F.3d 779, 784 (7th Cir. 2007). Because the NTA was filed *after* DHS officers spoke with Aparicio-Brito, § 287.3(c) is not implicated. *Matter of E-R-M-F- & A-S-M-*, 25 I&N Dec. 580, 585 (BIA 2011); *see also Samayoa-Martinez v. Holder*, 558 F.3d 897, 901–02 (9th Cir. 2009); *Yanez-Marquez v. Lynch*, 789 F.3d 434, 474 (4th Cir. 2015).

Aparicio-Brito also complains that the warning he ultimately received via the NTA is deficient because it appeared in English—a language he claims he cannot read—and no government official subsequently read it to him in Spanish. But there is insufficient evidence in the record that supports these claims. Nowhere in the record does Aparicio-Brito testify or otherwise attest that the government failed to transmit the warning in a manner that he could comprehend. And even assuming such a failure occurred, there is no indication that Aparicio-Brito was actually harmed by this al-

leged failure. This absence is unsurprising, given the fact that Aparicio-Brito's problematic statements (from his perspective, anyways) were uttered *before* he received the warning. The damage had already been done.

Before continuing on, we pause to note our concern with § 287.3(c), which does not require the receipt of a warning until after an NTA is filed. As this case demonstrates, such a receipt can occur after an immigrant is questioned by law-enforcement officials and has divulged potentially damning information. If anything, receiving the warning in an NTA merely hints at the difficulties that are likely to come, rather than protecting against such complications. But § 287.3(c) is clear, and Aparicio-Brito does not suggest a path to circumventing this clarity.

### 4. Court Lacks Jurisdiction to Review Petitioner's Claims Regarding Asylum and Withholding of Removal

Aparicio-Brito claims that the IJ violated his due process rights by failing to advise him about his right to apply for asylum under 8 C.F.R. § 1240.11(c)(1) once he expressed a fear of returning to Mexico. Aparicio-Brito also faults the IJ for denying him the opportunity to apply for asylum and withholding of removal when the IJ concluded that he had abandoned these applications by not submitting them alongside his application for cancellation of removal. However, we may not exercise jurisdiction over these claims.

As the government correctly notes, Aparicio-Brito failed to raise either argument with the BIA when he appealed the IJ's ruling. In fact, the word "asylum" does not even appear in his opening brief to the BIA. And when Aparicio-Brito

moved to reopen his removal proceedings so that an asylum hearing could be conducted, he did not argue that the IJ had acted erroneously regarding asylum. So he has failed to exhaust his administrative remedies.

We have recognized a limited exception to exhaustion when "exceptional circumstances" exist—specifically, when a petitioner raises a constitutional claim that the [BIA] 'would [have been] powerless to address.'" *Long-Gang Lin v. Holder*, 630 F.3d 536, 542 n.2 (7th Cir. 2010) (quoting *Pjetri v. Gonzales*, 468 F.3d 478, 481 (7th Cir. 2006)). However, such failure "is not excused when the claim is 'based on procedural failings that the [BIA] could have remedied.'" *Id.* Aparicio-Brito has not invoked this exception, and even if he had, it would not apply: the BIA could have remedied his claim by remanding the case to the IJ for a hearing on asylum and withholding of removal. *See id.*; *Cruz-Moyaho v. Holder*, 703 F.3d 991, 1001 (7th Cir. 2012).

### 5. Remaining Due Process Claims Are Meritless

In addition, Aparicio-Brito contends that the IJ somehow violated his due process rights by concluding that Aparicio-Brito had not been in the United States continuously for ten years and is not a person of good moral character. But Aparicio-Brito makes no attempt to situate these arguments in the due process context. Nor could he, since continuous presence and good moral character relate to cancellation of removal, which is a form of discretionary relief in which "there is no liberty interest at stake." *Delgado*, 674 F.3d at 765. We have repeatedly observed that similar attempts to disguise evidentiary challenges with due process verbiage are improper. *See, e.g.*, *Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011). So we will review these claims alongside

Aparicio-Brito's broader claim of eligibility for cancellation of removal, which we will turn to later.

Finally, Aparicio-Brito suggests that the IJ failed to apply the rule of lenity when the IJ "interpreted the law and the facts against [him]." The rule of lenity is a tool of statutory interpretation that "directs us to read 'ambiguous' statutory provisions narrowly in favor of the alien in deportation proceedings." *Lara-Ruiz v. INS*, 241 F.3d 934, 942 (7th Cir. 2001). Here, Aparicio-Brito has not identified any provision in the Immigration and Naturalization Act—or any other statute for that matter—that is ambiguous in any relevant way. His invocation of the rule therefore lacks any merit.

### B. Form I-213 Supplied Sufficient Information to Establish Alienage

The government bears the burden of proving removability by "clear and convincing evidence" based on an immigrant's presence in the United States without being admitted or paroled. 8 C.F.R. §§ 1240.8(a), (c); *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984). Where, as here, the BIA has found that the government has met this burden, "it is our task to consider whether the deportation order is supported by reasonable, substantial, and probative evidence." *Dashto v. INS*, 59 F.3d 697, 701 (7th Cir. 1995) (citations and internal quotation marks omitted). Although Aparicio-Brito attacks the IJ and BIA's alienage determination on various grounds, none can overcome this high bar.

First, Aparicio-Brito contends that the Form I-213, by itself, is insufficient because it "does not state that the Petitioner was advised that any statement he made could be used against him." But as discussed above, Aparicio-Brito

was not entitled to this instruction when the Form was created because the government had not yet initiated formal removal proceedings. Aparicio-Brito also claims that the Form I-213 is somehow invalid because he was in a stressful situation, under duress, and deprived of his liberty; however, these conclusory allegations lack the requisite factual and legal support to warrant consideration. *See United States v. Collins*, 796 F.3d 829, 836 (7th Cir. 2015) (explaining that unsupported arguments that are "bereft of citations" and "completely undeveloped" are "insufficient to raise an issue on appeal").

Finally, Aparicio-Brito argues that the Form I-213 lacks the requisite factual specificity regarding how its preparer encountered him and concluded that he was a Mexican citizen. We rejected a similar attack in *Antia-Perea*. In doing so, we emphasized that the Form I-213 was prepared the same day that the interview occurred; that the petitioner was present for this interview; and that the petitioner declined to tell his side of the story at any point during the removal proceedings, which warranted the IJ's drawing of adverse inferences. 768 F.3d at 657–58. All three considerations apply with equal force in this case. In particular, Aparicio-Brito has failed to allege a single fact indicating that his citizenship information was somehow fabricated or supplied by an individual other than himself. *See also Rosendo-Ramirez v. INS*, 32 F.3d 1085, 1088 (7th Cir. 1994) (concluding that I-213 was properly admitted where petitioner "could have made the statement [captured in the Form I-213] and can point to no evidence that he did not"). At the removal hearing, Aparicio-Brito suggested that the content of the Form may have been based solely on his "Hispanic appearance," but acknowledged that he had filed no affidavit to support this concluso-

ry claim. Aparicio-Brito attempts to distinguish *Antia-Perea* on the ground that the Form I-213 in that case expressly stated that the petitioner admitted his Mexican citizenship. Although the Form here does not describe Aparicio-Brito's admission so explicitly, the fact that an admission occurred is the only reasonable interpretation of the form. *Cf. id.* (observing that "the I-213 is supposed to be a record of a conversation with an alien").

Because Aparicio-Brito has not overcome the presumptive reliability of the Form I-213, we hold that the IJ and BIA properly considered it as evidence of alienage. *See Gutierrez-Berdin v. Holder*, 618 F.3d 647, 653 (7th Cir. 2010).

### C. Petitioner Ineligible for Cancellation of Removal

Aparicio-Brito claims that the IJ erroneously concluded that he was ineligible for cancellation of removal under § 1229b when the IJ found that he had failed to satisfy the continuous residence, good moral character, and exceptional hardship factors. We disagree.

An immigrant is eligible for cancellation of removal if he or she "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." 8 U.S.C. § 1229b(b)(1)(A). Presence is not "continuous," however, if the immigrant has departed the United States for "any period in excess of 90 days or for any periods in the aggregate exceeding 180 days." *Id.* § 1229b(d)(2). Eligibility also requires that the immigrant "has been a person of good moral character during such period"; "establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the

United States or an alien lawfully admitted for permanent residence"; and has not been convicted of certain offenses. *Id.* § 1229b(b)(1)(B)–(D). (The final factor is not at issue here.) The petitioner bears the burden of proof by a preponderance of the evidence. *Lopez-Esparza*, 770 F.3d at 607.

We lack jurisdiction to review a denial of cancellation of removal, except to the extent constitutional claims and questions of law arise. 8 U.S.C. §§ 1252(a)(2)(B), (D); *see also, e.g.*, *Cruz-Moyaho v. Holder*, 703 F.3d 991, 997 (7th Cir. 2012). "A legal question arises when the Board misinterprets a statute, regulation, constitutional provision, or its own precedent, applies the wrong legal standard, or fails to exercise its discretion at all." *Bachynskyy v. Holder*, 668 F.3d 412, 417 (7th Cir. 2011) (citing *Patel v. Holder*, 563 F.3d 565, 568 (7th Cir. 2009)). Although good moral character and extreme hardship generally are unreviewable, *see Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011); *Delgado v. Holder*, 674 F.3d 759, 765 (7th Cir. 2012), we have held that the continuous-presence requirement falls outside of the jurisdiction-stripping rule, *see Morales-Morales v. Ashcroft*, 384 F.3d 418, 423 (7th Cir. 2004) (concluding that "the meaning of the term 'continuous physical presence' is a non-discretionary question of statutory interpretation").

Aparicio-Brito faults the IJ for "determining that he had to have documentation to establish that he was not gone too long." But this argument ignores the fact that Aparicio-Brito was unable to testify confidently about the length of his trips whatsoever, much less that their lengths did not exceed 90 days individually or 180 days cumulatively. *Cf. Lopez-Esparza*, 770 F.3d at 608 (remanding where, though uncer-

tainty existed concerning the length of three trips, the aggregate length was certainly less than 180 days).

At his removal hearing, Aparicio-Brito said he returned to Mexico twice to visit family, once in 2000 and once in 2001. Critically, however, he could not recall the precise duration of either trip, speculating that they each may have lasted "[t]hree or four months possibly, I don't know exactly." Presumably understanding that three months was the maximum length for a permissible trip under § 1229b(d)(2), the IJ asked Aparicio-Brito whether he had employment records or any other type of documentation relating to the length of his trips. Aparicio-Brito had none, and did not provide any additional testimony from employers, coworkers, family, or friends. Given this lack of documentary support and the equivocal nature of Aparicio-Brito's testimony, the IJ correctly concluded that Aparicio-Brito failed to carry his burden of proof as to continuous presence. This failure alone prevents Aparicio-Brito from obtaining cancellation of removal, so we need not consider whether he adequately demonstrated exceptional hardship or good moral character. *Nunez-Moron v. Holder*, 702 F.3d 353, 359 (7th Cir. 2012).

### D. No Jurisdiction to Review Denial of Voluntary Departure

As the government correctly notes, we are generally precluded from reviewing a discretionary decision to deny voluntary departure. 8 U.S.C. § 1229c(f); *Bachynskyy*, 668 F.3d at 416. But we can review non-discretionary determinations relating to constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(D); *Hashish v. Gonzales*, 442 F.3d 572, 574 (7th Cir. 2006).

Aparicio-Brito purports to raise two legal questions. First, he argues that the IJ erroneously considered all four of his DUI offenses when only the final offense necessitated attention. We find that we have jurisdiction to address this issue but disagree with Aparicio-Brito's position. The Immigration and Nationality Act permits voluntary departure if, among other things, "the alien is, and has been, a person of good moral character for *at least* 5 years immediately preceding the alien's application for voluntary departure." 8 U.S.C. § 1229c(b)(1)(B) (emphasis added). Aparicio-Brito does not cite—and we are unaware of—any case that prohibits consideration of an alien's conduct beyond this five-year period. *Cf. Villanueva-Franco v. INS*, 802 F.2d 327, 330 (9th Cir. 1986) (rejecting an argument that the BIA "*impermissibly* considered convictions or acts beyond the five-year period" because the period "is necessary but not sufficient for a finding of good moral character" (quoting *Hibbert v. INS*, 554 F.2d 17, 20 n.2 (2d Cir. 1977)) (internal quotation marks omitted)). So the IJ did not err in considering all of Aparicio-Brito's DUI offenses.

Second, Aparicio-Brito argues that the IJ did not "consider and weigh the positive factors" against his DUI offenses. To the extent he suggests that a legal question exists because the IJ "fail[ed] to exercise its discretion at all," *Bachynskyy*, 668 F.3d at 417, we disagree. The IJ clearly weighed the positive and negative factors against one another when it found that Aparicio-Brito "ha[d] not submitted sufficient favorable evidence to offset th[e] unfavorable evidence." The BIA clarified this finding by acknowledging that Aparicio-Brito's attendance at AA meetings and church and his familial ties to the United States weigh in favor of granting voluntary departure, but that his criminal history outweighed these posi-

tive factors. Aparicio-Brito's real disagreement with the IJ's decision relates to *how* the IJ exercised his discretion in weighing the various factors; we lack jurisdiction to review this complaint. *See Lopez-Chavez v. Ashcroft*, 383 F.3d 650, 652 (7th Cir. 2004) (observing that courts do not have jurisdiction to review the merits of an underlying decision on a request for voluntary departure).

### E. BIA Properly Denied Motions for Reconsideration and to Reopen Proceedings

Aparicio-Brito contends that the BIA erred in denying his motion to reconsider the IJ's ruling, his motion to reopen the proceedings, and his motion to reconsider the denial of that motion. He faces an especially steep climb in proving these claims.

While motions to reconsider must "specify[] the errors of fact or law in the prior [BIA] decision," 8 C.F.R. § 1003.2(b)(1), they "are not replays of the main event," *Khan v. Holder*, 766 F.3d 689, 696 (7th Cir. 2014) (quoting *Rehman v. Gonzales*, 441 F.3d 506, 508 (7th Cir. 2006)) (internal quotation mark omitted). Similarly, a motion to reopen "shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the [earlier] hearing." 8 C.F.R. § 1003.2(c)(1). The BIA's denial of either type of motion will stand unless the denial "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Awad v. Ashcroft,* 328 F.3d 336, 341 (7th Cir. 2003) (internal quotation marks omitted); *Khan*, 766 F.3d at 696 (quoting *Victor v. Holder*, 616 F.3d 705, 708 (7th Cir. 2010)).

Here, the BIA properly denied Aparicio-Brito's motions for reconsideration. Rather than highlighting overlooked facts or case law, Aparicio-Brito's motions simply repeat earlier arguments presented to and rejected by the BIA. Indeed, aside from references to the BIA's initial decisions, the two motions for reconsideration are almost *identical* to the opening motions—same argument structure, same wording, same case law quotations. A motion for reconsideration is properly denied when, as here, the petitioner presents the same arguments to a different judge hoping for a more favorable outcome.

Aparicio-Brito's motion to reopen fares no better. The only new evidence Aparicio-Brito sought to introduce concerned violence in Mexico generally—evidence that was available to him well in advance of his removal hearing. And the only new case law he called the BIA's attention to, *Lopez-Esparza v. Holder*, undermined his case rather than fortifying it. *See supra* at 16–17. So the BIA's denials of the various motions must stand.

### III. CONCLUSION

We DENY Aparicio-Brito's petition for review.